## A00A0333. BEASLEY v. THE STATE.
(536 SE2d 825)

RUFFIN, Judge.

The statute of limitation for the offense of burglary is four years from the date of the commission of the crime.[1] Under OCGA § 17-3-2 (2), however, the statute is tolled during any period in which the "person committing the crime is unknown." In this appeal, we must decide whether the State "knows" who has committed a crime simply because it lifts a fingerprint from the crime scene, even though the fingerprint is not matched to the defendant until several years later. Because the statute requires actual, as opposed to constructive, knowledge, we hold that the State is not charged with knowledge of the offender's identity under such circumstances.

On February 3, 1994, a house in Cobb County was burglarized. The police lifted a partial fingerprint from a CD player that had been left on the living room floor. At the time, the State maintained an Automated Fingerprint Identification System (AFIS), a computer system allowing fingerprints to be analyzed for possible matches to other prints in the system. There was only one AFIS terminal in the entire state, however, located at the Georgia Bureau of Investigation office in Decatur. Due to the time required for a search and limited availability, this computer was used only for major cases.

---

[18] See *Cotton*, supra.
[19] See *Williams*, supra.
[1] See OCGA § 17-3-1 (c); *Kyles v. State*, 254 Ga. 49, 50 (326 SE2d 216) (1985).

In December 1997, Cobb County obtained its own remote terminal, which could access the AFIS. Due to demands placed on the main AFIS computer in Decatur, however, remote terminals such as the one in Cobb County could perform searches only in the evenings. After obtaining its own terminal, Cobb County began analyzing fingerprints in open cases, starting with the most recent cases and working its way backward. The fingerprint in this case was not input into the AFIS until the evening of July 22, 1998. The computer generated a list of ten possible matches, including Beasley. On July 23, Officer Homer Bishop examined this list and determined that the fingerprint lifted from the crime scene matched Beasley's prints on file.

Beasley was indicted for the burglary on October 1, 1998, and an amended indictment was issued on November 19, 1998. The amended indictment alleged that the limitation period "does not include any period between February 3, 1994 and July 22, 1998, said person committing the crime having been unknown until July 23, 1998." Beasley filed a plea in bar, alleging that prosecution was barred by the statute of limitation. Following a hearing, the trial court denied the plea in bar.[2] Beasley later agreed to a bench trial, stipulating to all of the allegations in the indictment except the allegation that the statute of limitation was tolled. The trial court convicted Beasley, holding that he was unknown until July 23, 1998.

On appeal, Beasley argues that he was not "unknown" within the meaning of the statute. He contends that the State should be charged with knowledge of his identity because it did not exercise reasonable diligence in analyzing the fingerprint. Had it used reasonable diligence, Beasley claims, it would have discovered his identity earlier.[3] In making this argument, Beasley is urging that we interpret OCGA § 17-3-2 (2) as applying a constructive knowledge or "should have known" standard.[4] Beasley cites no cases holding that

---

[2] This plea in bar was actually filed before the amended indictment, although the order denying it was filed after.

[3] Beasley does not state how much earlier the State would have discovered his identity if it had used reasonable diligence but implies that the State should be charged with knowledge from the time it lifted the fingerprint from the crime scene. At the hearing on his plea in bar, however, Beasley's attorney appeared to concede that some delay was reasonable, stating that

I understand it was probably a very huge hardship for investigators to run fingerprints. And I understand that they had to prioritize their cases. They had to reserve the fingerprint terminals for murder cases and very serious armed robbery cases, I'm sure, and other violent offenses. . . . It just would have been too burdensome. It would have taken a long time. They had a lot of — much more serious cases that came before it. . . . [W]e're not accusing the police of being lazy or not doing their job. We understand they have priorities.

[4] See *Borders v. Bd. of Trustees &c.*, 231 Ga. App. 880, 881 (500 SE2d 362) (1998) ("With constructive knowledge, the issue is not what [they] actually knew, but what they should have known.").

the statute applies such a constructive knowledge standard, nor are we aware of any. To the contrary, all the cases applying the statute have done so in the context of actual knowledge.[5]

Although Beasley cites cases from other states applying a constructive knowledge standard in determining whether a statute of limitation has expired, these cases generally apply statutes that expressly incorporate such a standard.[6] The Georgia statute, by contrast, does not expressly incorporate such a standard. It states that the statute of limitation does not run while the person who committed the crime is "unknown" — it does not say "and could not have been discovered through the exercise of reasonable diligence." Since other states desiring to adopt a constructive knowledge standard have done so through express statutory language, the fact that our legislature has not chosen to use such language suggests an intent to apply an actual knowledge standard.

In *Baker v. State*, the Supreme Court interpreted a similarly worded statute to require actual, as opposed to constructive, knowledge.[7] OCGA § 16-1-7 (b) provides that, if several crimes arising from the same conduct are "known" to the prosecuting officer, they must be prosecuted in a single prosecution. The Supreme Court rejected the proposition that this statute set forth a constructive knowledge standard, noting that

> we can find no other case in this state adopting this standard. Most importantly, we conclude that such a standard is not mandated by the statute, and would place too great a burden on prosecutors, who would have to institute strict requirements to insure that all police agencies with whom

---

[5] Although we have long held that the victim and others interested in the prosecution come within the class of persons whose knowledge will satisfy the statute, we have not held that such knowledge includes anything other than actual knowledge. See *Duncan v. State*, 193 Ga. App. 793 (389 SE2d 365) (1989); *Brown v. State*, 6 Ga. App. 329 (64 SE 1001) (1909).

[6] See *People v. Seda*, 93 NY2d 307, 310 (712 NE2d 682) (N.Y. App. 1999) (statute of limitation tolled during any period in which " 'the whereabouts of the defendant were continuously unknown and continuously unascertainable by the exercise of reasonable diligence' "); *State v. Escobar-Mendez*, 195 Ariz. 194, 197 (986 P2d 227) (Ariz. App. 1999) (statute of limitation begins upon "actual discovery . . . or discovery . . . which should have occurred with the exercise of reasonable diligence, whichever first occurs") (emphasis omitted); *State v. Baker*, 679 A2d 1002, 1006 (Del. Super. 1996) (allowing prosecution for certain offenses "within 2 years after discovery of the offense has been made or should have been made in the exercise of ordinary diligence"); *State v. Mack*, 637 S2d 18, 19 (Fla. App. 1994) (prosecution commences upon filing of indictment or information, provided that process is then executed "without unreasonable delay"). *State v. White*, 939 SW2d 113 (Tenn. Crim. App. 1996), also cited by Beasley, involved a statute, TCA § 40-2-103, providing that the limitation period is tolled during any period in which the defendant "conceals" the fact of the crime and, thus, is not similar to the statute in this case.

[7] 257 Ga. 567 (361 SE2d 808) (1987).

they work file complete arrest reports on every case.[8]

Recognizing the "difficulties that could result from a constructive knowledge test," the Court held that the statute applied "only to such crimes which are *actually* known to the prosecuting officer *actually* handling the proceedings."[9] In *Hill v. State*, we rejected the proposition that "information contained in an arrest report that is in the prosecutor's file may be imputed to the prosecutor's knowledge, whether the information was actually noticed by the prosecutor or not."[10]

Although *Baker* and *Hill* involved a different statute, the same considerations are present in this case. As discussed above, the language of OCGA § 17-3-2 (2) does not suggest that the legislature intended a constructive knowledge standard to apply. Moreover, as the Supreme Court recognized in *Baker* with respect to the double jeopardy statute, there are serious "difficulties that could result from a constructive knowledge test" in determining whether the police are charged with knowledge of the perpetrator's identity. For example, if a police officer fails to recognize the significance of a particular clue or fails to track down a lead in a timely manner, the defendant could contend that "reasonable" investigative efforts would have led the police to him earlier. In considering whether the police efforts were reasonable, the jury would of course have to consider such factors as the scarcity of police resources and the relative priority of various crimes. Adopting a constructive knowledge rule would thus require the jury not only to determine *when* the State discovered who committed the crime, but also to second-guess the reasonableness of police investigative techniques, thereby greatly expanding the focus of a criminal trial. Such a result would also greatly increase uncertainty, as different juries could disagree on whether the same police conduct (i.e., allocating investigative resources to more serious crimes first) was reasonable.

Clearly, it is within the legislature's authority to set forth the period in which a prosecution may be brought, as well as to prescribe the conditions under which that period will be tolled. In providing that the limitation period is tolled by the State's lack of knowledge, the legislature was free to adopt either an actual or a constructive knowledge standard. In light of its use of the word "unknown" instead of "unknowable" or some variant thereof, as well as the difficulties arising from a constructive knowledge standard, we believe that the legislature intended the word "unknown" to refer to lack of

---

[8] Id. at 568.

[9] (Punctuation omitted; emphasis in original.) Id. at 568-569.

[10] 234 Ga. App. 173, 176 (1) (507 SE2d 3) (1998).

actual knowledge.[11]

In one sentence in his brief, Beasley states that "the fingerprint of an individual *is* his identity," thus implying that the police had *actual* knowledge that he had committed the crime when it lifted his fingerprint from the scene. We think this argument merits little discussion.[12] A fingerprint, like a photograph, a DNA sample, or any other clue, may be very significant in leading the police to the perpetrator. However, unless and until the print is matched to an actual person, it cannot be said that the police know who committed the crime. Although the existence of an AFIS computer may allow the police to analyze the fingerprint more efficiently, this ability merely addresses itself to the reasonableness of any delay in ascertaining the perpetrator's identity.

In this case, it is undisputed that the fingerprint was not analyzed and matched to Beasley until July 1998, and Beasley was indicted within four years of that date. Accordingly, prosecution was not barred by the statute of limitation.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED JULY 7, 2000 ▬▬▬▬▬

*King, King & Jones, David H. Jones, Bernard S. Brody*, for appellant.

*Patrick H. Head, District Attorney, Charles M. Norman, Maria B. Golick, Dana J. Norman, Assistant District Attorneys*, for appellee.

---

[11] We recognize that the facts in this case are somewhat stark. The fingerprint was apparently the only material clue, and the police seemingly understood its significance immediately. Under these circumstances, it might appear unreasonable to fail to analyze the print for more than four years. However, the reasonableness of such a delay becomes relevant only if the statute applies a constructive knowledge standard, and it is not the function of this Court to give a strained interpretation to a statute in order to reach what we think is a proper result in a particular case.

[12] Indeed, this argument contradicts Beasley's attorney's own argument at the plea in bar hearing, where he stated that "[t]he offender was not known. However, they had the fingerprint."