## S04A0898. BRAWNER v. THE STATE.
(602 SE2d 612)

BENHAM, Justice.

Appellant Andray Brawner was convicted of malice murder and possession of a firearm by a convicted felon in connection with the homicide of Darryl White, who died from multiple gunshot wounds on February 23, 2002, in the backyard of Harold and Helen Smith's home in DeKalb County.[1] After reviewing the trial transcript, we

---

[1] During the May 2002 term of court, appellant and Jeffrey Flowers were charged in indictment with malice murder, felony murder (aggravated assault), and aggravated assault. Appellant was also charged with felony murder (possession of a firearm by a convicted felon), and possession of a firearm by a convicted felon. Appellant's trial began January 6, 2003, and

conclude appellant's constitutional right to confront a witness was violated by the use of hearsay, and we cannot say the use of that hearsay was harmless error. Accordingly, we reverse the judgment of conviction and remand the case to the trial court.

1. Several witnesses testified they heard one or two shots and then saw co-indictee Jeffrey Flowers come from behind the Smith house stuffing something into the back of his pants. Several more shots were heard shortly thereafter. The State Crime Lab firearms examiner testified one recovered bullet had been fired by a Ruger 9-mm pistol and the remaining bullets had been fired by a Smith and Wesson 9-mm pistol. Witnesses placed appellant Brawner on the home's front porch when the first shots were fired. Co-indictee Flowers testified the victim had sold bad cocaine to Kenny Johnson the night before the shooting and had been told by Johnson to return the $100,000 he had been given for the cocaine. Sean Ward testified Kenny Johnson had told him, Flowers, and Cardova Forte the night before the victim was killed to kill the victim and split the $100,000 the victim was supposed to be returning. Ward testified Johnson repeated the instructions the next day in appellant's presence. Ward said he saw appellant with a gun the day the victim was shot, saw appellant leave the front porch, go around to the back of the house after the initial two shots were fired, and draw his gun. Ward said he heard appellant say, "I got him," and saw appellant shoot the standing victim once, and then Ward heard multiple gunshots. Harold Smith, the owner of the house where the shooting occurred, testified he saw Flowers shoot the victim and leave, then heard the victim say, "Don't kill me, man," and saw appellant shoot him four times as the victim lay on the ground. After it was determined another witness, Willie "Cleve" Davis, was unavailable because he could not be found, the investigating detective was permitted over defense objections to read the statement Davis had given to the detective several days after the shooting, as well as the questions the detective asked and Davis's responses. By means of that reading, the jury learned Davis had told the officer he had seen appellant shoot the victim several times while the victim lay on the ground saying "Don't kill me."

concluded with the return of the jury's guilty verdicts on January 10. Because the felony murder conviction was vacated by operation of law and the aggravated assault conviction merged as a matter of fact into the malice murder conviction, appellant was sentenced on January 16, 2003, to life imprisonment for malice murder and a consecutive five-year sentence for the firearm possession. Appellant timely filed a motion for new trial on January 31, 2003, and, after appointment of appellate counsel, filed an amended motion for new trial on October 2. The trial court denied the amended motion on December 8, and appellant timely filed a notice of appeal on January 6, 2004. The appeal was docketed in this Court on February 4 and submitted for decision on the briefs.

The evidence summarized above, excluding the statement attributed to Davis, when coupled with evidence that appellant had previously been convicted of possession of cocaine, was sufficient to authorize the jury's guilty verdicts on the counts charging appellant with malice murder and possession of a firearm by a convicted felon. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. At trial, appellant objected to the admission of Cleve Davis's hearsay statement on the ground that defense counsel was unable to cross-examine the declarant/alleged eyewitness. The trial court admitted the out-of-court statement under the "necessity" exception to the rule against the admission of hearsay after determining the witness was unavailable and the statement had indicia of reliability in that it was made to police within two to three days of the homicide, it was made during the course of a police investigation, and there was no evidence the declarant was involved in the shooting other than as a witness. See *Ohio v. Roberts*, 448 U. S. 56, 66 (100 SC 2531, 65 LE2d 597) (1980) (right of confrontation does not bar admission of an unavailable witness's statement against a criminal defendant if the statement bears "adequate 'indicia of reliability.' ").

In *Crawford v. Washington*, 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004), the U. S. Supreme Court overruled *Ohio v. Roberts* and held that the Sixth Amendment's right of confrontation, applicable to the States through the Fourteenth Amendment's Due Process Clause, "demands . . . unavailability and a prior opportunity for cross-examination" before testimonial hearsay can be admitted against a criminal defendant. Id., 124 SC at 1374. The Court concluded that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation[,]" and held that the admission of a testimonial statement made by an unavailable witness against a criminal defendant who had no opportunity to cross-examine the declarant "is sufficient to make out a violation of the Sixth Amendment." Id. The U. S. Supreme Court declined to set out a comprehensive definition of "testimonial" (id.), but ruled that it is applicable "at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." Id. Under *Crawford*, the missing declarant's statement to the detective is "testimonial" hearsay since it was the result of police questioning, and its admission erroneously infringed upon appellant's constitutional right to confront the witnesses against him since appellant had not had a prior opportunity to cross-examine the declarant about the contents of the hearsay statement. *Bell v. State*, 278 Ga. 69 (597 SE2d 350) (2004); *Moody v. State*, 277 Ga. 676 (4) (594

SE2d 350) (2004).[2]

" 'Whether a constitutional violation constitutes harmless error depends on whether the State can prove beyond a reasonable doubt that the error did not contribute to the verdict.' [Cit.]" *Rowe v. State*, 276 Ga. 800, 804 (2) (582 SE2d 119) (2003). The State did not meet its burden in the case at bar. The erroneously-admitted hearsay, purportedly an eyewitness account of the crimes with which appellant was charged, went to the core issue of the case, appellant's guilt or innocence. To a certain extent, it corroborated the testimony of Ward and Smith, who said they saw appellant shoot the victim, though one said the victim was standing when he was shot and the other said he was prone when he was shot. However, both Ward's and Smith's veracity were repeatedly called into question when they were cross-examined. Ward testified he had contacted investigating officers six months after the shooting, while he was incarcerated in Putnam County for possession of cocaine and probation violation. Ward was impeached by his initial statement to police in which he said he had heard but not seen the shooting, by the testimony of other witnesses who said he was not at the scene, by the testimony of the other eyewitness who said the victim was lying on the ground when he was shot, and by his felony convictions from 1992-2002. Smith testified Kenny Johnson, the person who purportedly ordered the killing of the victim, was his nephew. Smith testified he had a drinking problem, had consumed approximately one-half pint of gin the day of the shooting, had consumed alcohol the morning he testified, and had been convicted of several felonies. Smith also admitted he sold beer and shots of alcohol from his house without any license to do so. Though Smith denied he sold illegal drugs in his home, his wife testified he did.[3]

In contrast with the testimony of Ward and Smith, the contents of the declarant's hearsay statement were placed before the jury unimpeached because the declarant did not testify. The declarant's unimpeached hearsay statement could have served, under the trial court's jury instruction concerning witness credibility,[4] as the corroborating credible testimony the jury needed to avoid disregarding

---

[2] We decline to endorse the State's suggestion that the holding in *Crawford v. Washington* be limited to situations wherein the hearsay declarant is a suspect since the Sixth Amendment does not so limit the right of confrontation and the U. S. Supreme Court did not so limit its holding.

[3] In addition, just before appellant's trial began, Flowers, the co-indictee who admitted having fired the first shots at the victim, pled guilty to aggravated assault of the victim, with sentencing to follow his testimony in several trials.

[4] "If you find that a witness has been successfully impeached by proof of previous contradictory statements, you may disregard that testimony unless it is corroborated by other

the testimony of a witness who had been successfully impeached by proof of previous contradictory statements. However, at the hearing on appellant's motion for new trial, appellate counsel introduced certified copies of the missing witness's multiple felony convictions that would have been used to impeach him had he testified. Appellate counsel also established that the hearsay declarant was on probation from his conviction for possession of cocaine with intent to distribute at the time he gave the statement to police, another impeaching factor that was not before the jury because the declarant did not testify.

Since all of the witnesses who identified appellant as the killer were impeached and the only unimpeached statement identifying appellant as the killer was admitted in violation of the Sixth Amendment guarantee of the right of a criminal defendant to confront the witnesses against him, we cannot say the State proved beyond a reasonable doubt that the admission of the hearsay in violation of the U. S. Constitution did not contribute to the jury's verdict. See *Yancey v. State*, 275 Ga. 550 (3) (570 SE2d 269) (2002). Accordingly, we reverse the judgment of conviction and remand the case to the trial court for further proceedings consistent with this opinion.

3. In light of our reversal of the judgment of conviction based on the foregoing, we need not address appellant's remaining enumerated errors.

*Judgment reversed and case remanded. All the Justices concur, except Hunstein, J., who concurs in Divisions 1 and 3 and in the judgment.*

DECIDED SEPTEMBER 13, 2004.

*Melissa M. Nelson*, for appellant.
*Jeffrey H. Brickman, District Attorney, Barbara B. Conroy, Assistant District Attorney, Thurbert E. Baker, Attorney General, Raina Nadler, Assistant Attorney General*, for appellee.

---

credible testimony, and the credit to be given to the balance of the testimony of the witness would be for you to determine."