## S04A1260. JENKINS v. THE STATE.

(604 SE2d 789)

FLETCHER, Chief Justice.

In accordance with the Unified Appeal Procedure, we granted the application for interim review in this death penalty case. The State charged Byron Jenkins with malice murder, felony murder, aggravated assault, three counts of armed robbery, kidnapping with bodily injury, burglary, and two counts of possession of a firearm during the commission of a crime. Jenkins filed a plea in bar seeking dismissal of all the charges except for murder and felony murder because of the expiration of the statute of limitations, and also challenged the admissibility of certain hearsay statements that the trial court had ruled admissible under the necessity exception.

We requested that the parties address these two issues: (1) if the trial court properly ruled that the statute of limitations had expired and was not tolled for all the charges except murder and felony murder, should the trial court still submit that particular issue to the jury; and (2) are Arthur Jenkins's statements to the police admissible under the necessity exception to the rule against hearsay evidence?

It is uncontroverted that the State did not indict Jenkins until more than seven years had passed since his alleged commission of the crimes, but the State argued that the statute of limitations was tolled during that period because they did not know the identity of the perpetrator. Although the trial court found that the statute of limitations had expired on all the charges except for murder and felony murder, it still ruled that the tolling question should be submitted to the jury at trial. We conclude that the trial court properly concluded as a matter of law that the statute of limitations had expired and was not tolled for all the charges except murder and felony murder, and that the trial court erred by ruling that the issue must still be submitted to the jury.

The trial court also ruled before trial that statements given to police by Jenkins's uncle, Arthur Jenkins, were admissible under the necessity exception to the hearsay rule. Because the recent United

States Supreme Court decision of *Crawford v. Washington*[1] prohibits the admission of those statements, however, we reverse that particular ruling.

## THE STATUTE OF LIMITATIONS

1. The progression of the investigation is an important part of the determination of whether the statute of limitations tolled in this case for the lack of a known suspect. On August 25, 1993, Doyle Butler visited his cabin in Harris County to mow the lawn and perform some other chores. After he failed to return to Columbus for a 6:00 p.m. church function, Butler's wife and some friends drove to the cabin but could not find him. Butler's pickup truck, as well as some household items like a television, a weedeater, a shotgun, and a .22 caliber handgun, were missing from the cabin. There was a gas can and two burnt matches inside the cabin, indicating that someone may have tried to burn the cabin. There was also a bloodstain on the sofa.

The police arrived and searched the surrounding area. At midnight, they found Butler's pickup truck parked on a road only a few hundred feet from Butler's cabin. The pickup truck had *not* been parked there when the officers first responded to the crime scene several hours earlier. The bed of the pickup truck was wet as if it had recently been hosed down, and there was a cigarette butt in the bed of the truck. The next morning, the police found two guns on Butler's property near a beer can that had been cut in half to create a "crack smoking device." The guns were a .22 caliber handgun, identified as belonging to the victim, and a .22 caliber Winchester rifle, which the victim's family said did not belong to them.

The police found Butler's body on a nearby logging trail. He had suffered several blows to the head and died from a .22 caliber gunshot wound to the back of his head. The GBI crime lab tested the bullet from the victim's head and found that it matched the bullets test-fired from the victim's .22 caliber handgun.

The police also discovered a bullet hole inside Butler's cabin and extracted a bullet from the wall. The crime lab determined that this bullet was consistent with bullets test-fired from the .22 caliber Winchester rifle.

The police interviewed Byron Jenkins on August 26, 1993. They were interested in speaking with him because he lived only two-tenths of a mile from Butler's cabin in a house with his elderly grandmother and uncle. Jenkins was a crack addict who had been convicted of three August 1992 burglaries or attempted burglaries of

---

[1] 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004).

houses within four-tenths of a mile of his house. In a written confession to those burglaries, Jenkins had admitted his crack addiction. He had been incarcerated for the burglaries until early 1993.

During the interview, Jenkins said that he had been at home all day on August 25, mowing the lawn, watching TV, and taking a nap, and that his grandmother could verify his alibi. He agreed to a search of his bedroom and the police seized some of his clothes.

When police spoke with Jenkins's grandmother that same day, she said Jenkins had left home on the afternoon of August 25 and had not returned until after midnight. The police also spoke with Jenkins's uncle, Arthur Jenkins. Arthur said he had gone to Florida to buy lottery tickets on August 25, and that when he returned home at 1:00 p.m., Jenkins was not there. He stated that Jenkins did not come home until after midnight. Arthur Jenkins also identified the .22 caliber Winchester rifle as his and said he had been looking for it. He further stated that his nephew smoked cigarettes and did not have a car.

The police interviewed Jenkins again. After admitting that he had lied when first questioned by the police, he changed his story and stated that he had left his house the afternoon of August 25 and hitchhiked to a crack house in a nearby town where he had smoked $50 of crack all day. He had returned at midnight, but he could not provide the names of anyone who had given him a ride. The police went to the place he had described and found that it was indeed a crack house. His grandmother also changed her story when the police spoke to her again. She said she remembered that Jenkins was home watching TV when she returned from a funeral at 4:30 p.m. on August 25.

The first attempt to lift identifiable fingerprints from the pickup truck cab was unsuccessful, but a later attempt on September 7, 1993, using the "Super Glue" method, preserved a palm print from an armrest on the driver's seat. The GBI analyst, however, found that it lacked "sufficient ridge detail" for a match with Jenkins's (or anyone's) palm print.

The police drew Jenkins's blood pursuant to a search warrant in December 1993. In January 1994, the crime lab found that DNA extracted from saliva on the cigarette butt in the truck bed was a match with Jenkins's DNA. Due to the imprecision of the DNA test used, the crime lab could only report that this DNA profile was consistent with one out of one thousand African-Americans.

The police investigated other drug addicts and people in Jenkins's circle of acquaintances and, in February and March 1994, two people stated that Jenkins had called them on August 25 and asked them if they were interested in buying a TV which he had on the back of a pickup truck. One of these witnesses stated that Jenkins had

informed him that he had obtained the TV from "some old man." A person jailed with Jenkins in September 1993 also reported to the police that Jenkins had called someone on the telephone in the days after the murder of Doyle Butler and instructed them to get rid of some clothes. The investigation then petered out, and Jenkins spent several years incarcerated for drug and theft offenses in Florida and Georgia.

On July 25, 2000, a prosecutor on the case brought the unidentified palm print to a fingerprint examiner who concluded that it was indeed a match for Jenkins. The print was then sent to the same GBI fingerprint examiner who had examined it in 1993 and this time he also identified it as a match for Jenkins. On September 11, 2000, more than seven years after the alleged commission of the crimes, Jenkins was indicted for the murder and felony murder of Doyle Butler and for armed robbery, burglary, kidnapping with bodily injury, and possession of a firearm during the commission of a felony. He was re-indicted a year later so the State could add to the charges other than murder[2] an allegation that the statute of limitations was tolled because Jenkins "was not usually and publicly a resident within the State of Georgia and because the identity of said Byron Jenkins as the person committing the crime was unknown until July 25, 2000."[3]

A. *The statute of limitations had run and was not tolled as to the non-murder charges.* Jenkins filed a plea in bar claiming that all the charges except for murder and felony murder should be dismissed because of the expiration of the statute of limitations. Armed robbery and kidnapping with bodily injury have seven-year statutes of limitation.[4] Burglary, aggravated assault, and the firearm possession charges have four-year statutes of limitation.[5] In criminal cases, the statute of limitations runs from the time of the criminal act to the time of indictment.[6] It is uncontroverted that the State did not indict Jenkins until more than seven years had elapsed from the date of the commission of the offenses.

In its argument that the statute of limitations had been tolled as to the non-murder charges, the State first conceded that Jenkins was often a public resident of Georgia so that the first part of their tolling allegation did not apply; in fact, he had been in jail in Georgia for part of the alleged tolling period.[7] But the prosecutor argued that the State

---

[2] Murder, of course, has no statute of limitations. OCGA § 17-3-1 (a).

[3] See OCGA § 17-3-2 (1), (2).

[4] OCGA § 17-3-1 (b).

[5] OCGA § 17-3-1 (c).

[6] *Hall v. Hopper*, 234 Ga. 625, 626 (216 SE2d 839) (1975).

[7] See OCGA § 17-3-2 (1); *Danuel v. State*, 262 Ga. 349, 352 (3) (418 SE2d 45) (1992) (tolling period concerning the accused not usually and publicly being a resident of the state applies

did not have "actual knowledge" of the identity of Jenkins as the perpetrator of the offenses until the palm print match on July 25, 2000.[8] At the hearing on this issue, the former district attorney testified that he did not believe he had enough evidence to indict Jenkins in 1993 and 1994. The only piece of scientific evidence at that time that directly implicated Jenkins was the DNA on the cigarette butt, but the frequency, 1/1,000, was relatively low. The State also presented evidence that there were other suspects, that Jenkins had no blood on his clothes, and that the stolen items from the Butler cabin, other than the handgun, were never recovered.

There are few cases that interpret the meaning of OCGA § 17-3-2 (2), which states that the statute of limitations is tolled when the "person committing the crime is unknown."[9] In *Beasley v. State*, the Court of Appeals determined that the statute of limitations was tolled as to a burglary indictment because the identity of the person committing the crime was unknown to the State. A house in Cobb County had been burglarized and the police lifted a fingerprint from the scene.[10] There were apparently no suspects.[11] Over four years later, the print was finally run through a fingerprint database and registered a hit on Beasley.[12] He was indicted for burglary, which has a four-year statute of limitations.[13] The Court of Appeals affirmed the trial court's denial of Beasley's plea in bar because it concluded that the statute of limitations was tolled as the State did not know Beasley's identity until the fingerprint match. The Court of Appeals held that the statute of limitations is tolled until the State has "actual knowledge" of the perpetrator.[14]

The State in Jenkins's case cited *Beasley v. State* in its claim that the statute of limitations was tolled because the State did not have "actual knowledge" that Jenkins was the perpetrator until the palm print match. The trial court found otherwise because the State had DNA and other evidence, such as Jenkins's conflicting statements, the statements of other witnesses, and the rifle, that pointed to Jenkins's identity as the alleged perpetrator within a short time after the crimes. The palm print was also available to the police and they

---

when the accused has absconded from the state or concealed himself so that he cannot be arrested).

[8] See OCGA § 17-3-2 (2) (statute of limitations period tolled if "person committing the crime is unknown. . . .").

[9] See id.; *Beasley v. State*, 244 Ga. App. 836 (536 SE2d 825) (2000).

[10] *Beasley*, supra at 836.

[11] Id. at 840, n. 11 ("The fingerprint was apparently the only material clue. . . .").

[12] Id. at 837.

[13] Id.; OCGA § 17-3-1 (c).

[14] Id. at 839-840; OCGA § 17-3-2 (2).

compared it with Jenkins's palm print. All that was involved in 2000 was the State's re-comparing of a palm print that it already possessed for almost seven years.

We agree with the trial court's ruling that the statute of limitations had run and was not tolled as to all the offenses but murder and felony murder. We conclude that the General Assembly intended for the "person unknown" tolling exception to apply to a situation, as in *Beasley*, where there is no identified suspect among the universe of all potential suspects. The tolling exception to the statute of limitations cannot be based upon the subjective opinion of the district attorney as to whether there was enough evidence to file charges against a particular person. Otherwise, there would be tolling of the statute of limitations for routine investigation into a crime; the State could build a case against a non-murder suspect for five or ten years and then file charges when it believes that it has obtained sufficient evidence by claiming that the statute of limitations was tolled until that moment. Such a broad interpretation of the tolling period would permit the exception to swallow the rule. The evidence shows that the State had actual knowledge of Jenkins's identity as a suspect for the crimes shortly after they were committed, but it did not indict him until more than seven years had elapsed.[15] Therefore, we affirm the trial court's ruling on the dismissal of the non-murder charges due to the expiration of the statute of limitations.[16]

B. *Once the trial court has granted a plea in bar on the statute of limitations it should not submit the dismissed charges to the jury.* As previously stated, the trial court correctly found that the statute of limitations had run on all the charges but murder and felony murder. The trial court still ruled, however, that the State's tolling allegations with respect to some of the charges had to be submitted to the jury, even though it believed that their prosecution was barred by the statute of limitations. Since there were some factual issues relating to the "actual knowledge" of the State, the trial court felt it was bound by law to present this issue to the jury on some of the charges.[17] This Court's decision in *Bell v. State* seems to suggest that a plea in bar involving factual issues must be presented to a jury.[18]

The law is unclear as to the proper procedure for determining the application of a statute of limitations. In *State v. Tuzman*,[19] the Court

---

[15] See *State v. Tuzman*, 145 Ga. App. 481, 484 (243 SE2d 675) (1978) (sufficient evidence for trial court to conclude that statute of limitations had run).

[16] See id.; OCGA § 17-3-1 (b), (c).

[17] See *Bell v. State*, 249 Ga. 644, 645 (1) (292 SE2d 402) (1982).

[18] Id. ("No question of fact was at issue in this special plea in bar, so it was unnecessary to have a jury hear the plea.").

[19] 145 Ga. App. at 483.

of Appeals held that a pretrial evidentiary hearing on a plea in bar based upon the statute of limitations is a "very effective, fair and expedient method to deal with limitation problems in many cases."[20] The Court of Appeals stated that application of the statute of limitations can be a jury question,[21] but it can also be resolved with a pretrial evidentiary hearing and order.[22] We note that while it is true that an exception to the statute of limitations must be pled in the indictment if the State is relying on one,[23] the statute of limitations is not an element of the crime per se; it is found in Title 17 (Criminal Procedure) in the chapter entitled "Limitations on Prosecution."[24] Obviously, it exists for the protection of the defendant.[25]

We conclude that the trial court erred by ruling that even though Jenkins prevailed on his plea in bar, the statute of limitations issue had to be submitted to the jury for some of the non-murder charges. Other pleas in bar on issues such as speedy trial are not submitted to the jury if the defendant prevails before trial, even if they involve fact issues and evidentiary hearings.[26] Although the Court of Appeals in *Tuzman* suggested that the trial court could refuse to hold a pretrial hearing on the plea in bar and submit the statute of limitations issue to the jury,[27] we believe that the proper procedure for litigating a plea in bar based upon the statute of limitations should be analogous to a pretrial *Jackson v. Denno*[28] hearing, wherein if the defendant prevails on the issue of the voluntariness of a statement, the jury never hears the statement; if the State prevails on a pretrial *Jackson v. Denno* hearing the statement is admissible, but the defendant is still entitled to present evidence and argument that it was not voluntary, and the State must prove otherwise.[29] If a defendant prevails on a pretrial plea in bar on the statute of limitations, the charge should be dismissed;[30] if the State prevails on this issue before trial, the defendant may still require the State to prove at trial that the charge is not barred by the statute of limitations.[31] Otherwise, if the State

---

[20] Id.

[21] Id. at 482-483.

[22] Id. at 483.

[23] *McLane v. State*, 4 Ga. 335, 341-342 (1848).

[24] See OCGA § 17-3-1.

[25] See *McLane*, supra at 342.

[26] See, e.g., *State v. Johnson*, 274 Ga. 511 (555 SE2d 710) (2001).

[27] 145 Ga. App. at 483.

[28] 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

[29] See, e.g., *James v. State*, 223 Ga. 677, 680-681 (157 SE2d 471) (1967); *Griffin v. State*, 230 Ga. App. 318, 323-324 (496 SE2d 480) (1998); Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (3rd ed.), pp. 19-22.

[30] Of course, the State could appeal this order. OCGA § 5-7-1 (a) (1), (3).

[31] See *Tuzman*, 145 Ga. App. at 483-484 ("At trial, the burden is unquestionably upon the

could still submit the charges to a jury even though the trial court has found at a pretrial evidentiary hearing that the statute of limitations applies to bar their prosecution, there would be no point to having a pretrial hearing. In Jenkins's case, because the trial court correctly found before trial that the statute of limitations barred his prosecution on the non-murder charges, the State cannot present these charges to the jury at trial.[32]

## THE ADMISSIBILITY OF ARTHUR JENKINS'S STATEMENTS

2. As previously stated, Jenkins's uncle, Arthur Jenkins, provided statements to the police that tended to incriminate Jenkins. Arthur has since died. The State sought to admit Arthur's statements to the police under the necessity exception to the hearsay rule, and the trial court ruled that the statements were admissible.[33]

A recent United States Supreme Court decision, however, limits the viability of the necessity exception to the hearsay rule. In *Crawford v. Washington*,[34] the United States Supreme Court held that the Sixth Amendment Confrontation Clause prohibits the admission of "testimonial" statements from an unavailable witness unless the defendant has had a prior opportunity to cross-examine the witness.[35] Particularized guarantees of reliability cannot substitute for confrontation and cross-examination. "Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty."[36] Although the Supreme Court left for another day a comprehensive definition of a "testimonial" statement, it did establish that at the very least, a statement is testimonial if it is made with "[t]he involvement of government officers in the production of testimonial evidence," which includes police interrogations.[37] It went on to note that it was using "interrogation" in its colloquial, not technical sense, and averred that this included "structured police questioning."[38] Since *Crawford v. Washington*, we have interpreted "testimonial statements" to include those statements made by witnesses to police officers investigating a

---

state to prove that a crime occurred within the statute of limitation, or, if an exception to the statute is alleged, to prove that the case properly falls within the exception."); Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (3rd ed.), pp. 39-40.

[32] See *Tuzman*, 145 Ga. App. at 484.

[33] See *Perkins v. State*, 269 Ga. 791, 795-796 (4) (505 SE2d 16) (1998); OCGA § 24-3-1 (b).

[34] 124 SC at 1354.

[35] Id. at 1374.

[36] Id. at 1371.

[37] Id. at 1365.

[38] Id. at 1365, n. 4.

crime.[39]

Arthur Jenkins's statements to the police were testimonial because they were the product of questioning by police officers investigating the murder of Doyle Butler.[40] Jenkins has never had the opportunity to cross-examine his uncle about those statements. Therefore, we conclude that Arthur Jenkins's statements to the police are inadmissible at Jenkins's trial and the trial court's ruling to the contrary was error.[41]

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED NOVEMBER 8, 2004.

*Hagler & Hyles, M. Stephen Hyles, Clark C. Adams, Jr.,* for appellant.

*J. Gray Conger, District Attorney, Mark C. Post, Assistant District Attorney, Thurbert E. Baker, Attorney General,* for appellee.

---

[39] See *Brawner v. State*, 278 Ga. 316, 318-319 (2) (602 SE2d 612) (2004) (statement by alleged eyewitness to investigating police officers not admissible where witness is absent from trial and defendant had no prior opportunity to cross-examine the witness); *Bell v. State*, 278 Ga. 69, 71-72 (3) (597 SE2d 350) (2004) (murder victim's statements to police officers investigating previous complaints against defendant were "testimonial in nature" and should not have been admitted at trial); *Moody v. State*, 277 Ga. 676, 679-680 (4), n. 6 (594 SE2d 350) (2004) (a "testimonial statement" encompasses statements made by witnesses during a "field investigation" by police officers).

[40] See *Crawford*, 124 SC at 1354; *Bell*, 278 Ga. at 71-72.

[41] See id.