926 So.2d 1076 (2005)
Darryl Anthony PACKER
v.
STATE of Alabama.
CR-03-1156.
Court of Criminal Appeals of Alabama.
May 27, 2005.
Rehearing Denied July 8, 2005.
Certiorari Denied October 14, 2005.
L. Scott Johnson, Jr., Montgomery, for appellant.
Troy King, atty. gen., and James B. Prude, asst. atty. gen., for appellee.
Alabama Supreme Court 1041598.
BASCHAB, Judge.
AFFIRMED BY UNPUBLISHED MEMORANDUM.
McMILLAN, P.J., and WISE, J., concur; COBB and SHAW, JJ., concur in the result, with opinions.
COBB, Judge, concurring in the result.
I concur in the result reached in the unpublished memorandum. I join that part of Judge Shaw's special writing that recognizes the need for special consideration of this case in light of the fact that it presents the first opportunity for this Court to evaluate, in the context of Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the admissibility of a variety of statements by a victim, including an emergency 911 call, to the police during initial field investigations and to medical personnel, family, and friends. I agree with most of the discussion and analysis in Judge Shaw's special writing, and I agree with the conclusion reached in that writing that the statements to the 911 operator and to family, friends, and medical personnel were nontestimonial.
I disagree only with Judge Shaw's conclusion that all of the statements to law-enforcement officers were nontestimonial. I agree that the victim's initial statement to Officer Dannelly at the scene was nontestimonial; of greater concern was the statement the victim made to Detective *1077 Roberts at the emergency room. The United States Supreme Court, while not defining "testimonial" specifically, did state, "Statements taken by police officers in the course of interrogations are also testimonial under even a narrow standard." Crawford, 541 U.S. at 52, 124 S.Ct. 1354. Some courts have held that statements made by witnesses to police officers investigating a crime are testimonial. E.g., Jenkins v. State, 278 Ga. 598, 604 S.E.2d 789 (2004). Even if the statement to Detective Roberts was testimonial, however, its admission was harmless because it was cumulative.
I disagree with the majority's treatment here of this recent decision by the United States Supreme Court because I believe additional analysis and discussion was necessary for each of the categories of people who heard the victim's statements. However, because I agree that no reversible error occurred, I concur in the result reached in the unpublished memorandum.
SHAW, Judge, concurring in the result.
I agree that the appellant's convictions and sentences should be affirmed. However, because, to my knowledge this is the first case in which this Court has discussed the parameters of the Confrontation Clause within the context of statements made to police during an emergency 911 call and during initial field investigations, or to family, friends, and medical personnel, I write specially to express my thoughts on Part I of the unpublished memorandum.
In Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court left for another day any effort to articulate a comprehensive definition of testimonial statements. However, because the primary analysis of the Confrontation Clause issue in cases like this one concerns whether a particular statement is testimonial or non-testimonial in nature, this Court must proceed carefully to apply Crawford and to clarify the reach of the Confrontation Clause.
As I understand the law, if the statements at issue in the present case are nontestimonial, then the requirements of Crawford are not implicated, and the admissibility of the statements is largely a matter of applying evidentiary rules regarding hearsay and various hearsay exceptions.
The Supreme Court in Crawford provided some insight into what it believes constitutes a testimonial statement. The Court initially noted that the principal evil at which the Confrontation Clause is directed is the civil-law mode of criminal procedure, particularly its use of ex parte examinations by representatives of the government, conducted for the purpose of obtaining evidence to be used against the accused at trial. Recently, in State v. Davis, 364 S.C. 364, 613 S.E.2d 760 (Ct. App.2005), the Court of Appeals of South Carolina concisely summarized the guidance provided in Crawford:
"The Crawford Court established that whatever else testimonial covers, `it apples at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a formal trial; and to police interrogations.' 541 U.S. at 68, 124 S.Ct. at 1374. Looking to the language of the Sixth Amendment for guidance, the Court deduced that `[t]he text of the Confrontation Clause .... applies to "witnesses" against the accusedin other words, those who bear testimony.' Id. (citation omitted). The Court explained:
"`"Testimony," in turn, is typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." ... [A]n accuser *1078 who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not. The constitutional text, like the history underlying the common-law right of confrontation, thus reflects an especially acute concern with a specific type of out-of-court statement.'
"Id.

"The Court mentioned three formulations of `this core class of "testimonial" statements':
"(1) `ex parte in-court testimony or its functional equivalentthat is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially';
"(2) `extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions'; and
"(3) `statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial[.]'
"Id. at 51-52, 124 S.Ct. at 1364 (citations omitted).
"Additional instruction may be found in the Court's recurring references to what it called the `principal evil at which the Confrontation Clause was directed.' Throughout the opinion, the Court interpreted the Clause by referencing its historical purpose of protecting against the `civil-law mode of criminal procedure, and particularly its use of ex parte examinations as evidence against the accused.' Id. at 50, 124 S.Ct. at 1363.
"The continental civil-law tradition `condon[ing] examination in private by judicial officers' stands in historical contradistinction to the English common-law tradition of `live testimony in court subject to adversarial testing.' 541 U.S. at 43, 124 S.Ct. at 1359 (citing 3 W. Blackstone, Commentaries on the Laws of England 373-74 (1768)). Yet, the civil-law practice eventually found its way to England:
"`Justices of the peace or other officials examined suspects and witnesses before trial. These examinations were sometimes read in court in lieu of live testimony, a practice that "occasioned frequent demands by the prisoner to have his `accusers,' i.e. the witnesses against him, brought before him face to face...."
"`Pretrial examinations became routine under two statutes passed during the reign of Queen Mary in the 16th century .... These ... statutes required justices of the peace to examine suspects and witnesses in felony cases and to certify the results to the court.... [T]hey came to be used as evidence in some cases, ... resulting in an adoption of continental procedure.'
"Id. at 43-44, 124 S.Ct. at 1359-60 (citations omitted).
"It was against this backdrop that the Confrontation Clause stage was set. Thus, the Sixth Amendment `must be interpreted' with this focus on preventing the civil-law use of ex parte examinations as evidence against the accused in mind. Id. at 50, 124 S.Ct. at 1363. See id. at 51, 124 S.Ct. at 1364 (noting that while ex parte examinations might sometimes be admissible under modern rules, the Framers certainly would not have condoned them); id. at 53, 124 S.Ct. at 1365 (observing that the current investigatory involvement of police officers in the production of testimonial evidence presents the same risk as the civil-law practices of justices of the peace); id. at *1079 68, 124 S.Ct. at 1374 (finding that testimony at a preliminary hearing, before a grand jury, or at a former trial; and interrogation by police have the `closest kinship to the abuses at which the Confrontation Clause was directed')."
364 S.C. at 374-76, 613 S.E.2d 766-67.
Considering the history underlying the Confrontation Clause, the basic evil at which the Clause was directed, the specific examples of testimonial statements provided by the Court in Crawford, and the record in this case, I do not believe that the statements at issue here are testimonial in nature. A victim's statement to an emergency 911 operator may be fundamentally different from the kind of statements contemplated by Crawford. Based on my understanding of the 911 call in the present case, the victim's statements bore no indicia of the kind of statement contemplated in Crawford. See State v. Davis, supra, for a good discussion of post-Crawford decisions discussing statements made during 911 calls. Furthermore, I agree with the conclusion reached in the unpublished memorandum that the victim's statements to the officer who responded to the scene of the crime and to the officer who responded to the emergency room were not obtained through police interrogations, at least as I understand the term "interrogation."[1] Although the record does not clearly indicate how or to what extent the officers may have questioned the victim, the victim did not provide a formal statement or an affidavit to the officers, and although she may have been aware that she was bearing witness against her attacker in some sense, I find no indication in the record from which it can be reasonably inferred that she contemplated that her statements were being made with the expectation that they would be introduced as evidence in future legal proceedings. It does not seem to me that a brief, preliminary inquiry of the victim of a crime by the police, not involving any kind of structured questioning, made in response to a request for assistance or very soon after the crime was reported, for the sole purpose of initiating and expediting an investigation and apprehending the perpetrator, i.e., informal remarks made to an officer conducting a routine field investigation, is necessarily the kind of modern practice bearing a close kinship to the abuses at which the Confrontation Clause was directed. See State v. Davis, supra, and the cases discussed therein. Finally, I see no basis for concluding that the victim's statements to the other witnesses were testimonial in nature. I find nothing in Crawford to suggest that hearsay statements made to family, friends, or acquaintances, either spontaneously or pursuant to general conversation, or to others outside any arguably judicial or investigatory context, are the kind of statements to which Crawford speaks. See also State v. Davis, supra.
NOTES
[1] The Court in Crawford noted that the term "interrogation" was being used in its colloquial, rather than any technical, legal sense. Although the recorded statement at issue in Crawford, knowingly given in response to structured police questioning, was held to qualify under any conceivable definition, the Court left open the possibility that the term "interrogation" might be subject to a different, more expansive definition than the legal one found in Black's Law Dictionary or discussed in our cases: "Just as various definitions of `testimonial' exist, one can imagine various definitions of `interrogation,'...." 541 U.S. at 53 n. 4, 124 S.Ct. 1354. However, whatever definition of the term "interrogation" the Court may have had in mind by this open-ended statement, it is difficult for me to imagine any such definition that would include the kind of preliminary, investigatory questioning that apparently occurred in the present case.