**SECOND DIVISION**
**MARKLE,**
**LAND and DAVIS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 27, 2025**

# In the Court of Appeals of Georgia

A24A1618. DUKE v. THE STATE.
A24A1619, A24A1670. DUKES v. THE STATE (two cases).

LAND, Judge.

We granted the interlocutory applications of Ryan Duke and Bo Dukes[1] to consider whether the trial court erred when it denied their pleas in bar arising from the 2005 disappearance and death of Tara Grinstead. The trial court ruled that the State was not barred from re-indicting Ryan in Ben Hill County in June 2022 after his partial acquittal in Irwin County on charges including murder because the State did not have probable cause sufficient to activate the running of the four-year statute of limitation,

---

[1] To avoid confusion between the two unrelated men, we refer to Ryan Duke as "Ryan" and Bo Dukes as "Bo." See *Dukes v. State*, 365 Ga. App. 246, 247 n.1 (878 SE2d 104) (2022) (affirming Bo's 2019 conviction in Wilcox County on charges including making a false statement, hindering apprehension of a criminal, and concealing the death of another).

OCGA § 17-3-1, until February 19, 2017, when Bo named Ryan as the murderer. The trial court also held that Bo's 2017 Ben Hill County indictment was not time-barred and that the Ben Hill County action was not barred by double jeopardy after his March 2019 conviction on related charges in Wilcox County. In Case No. A24A1618, Ryan argues that law enforcement had probable cause to arrest him no later than early February 2017 and that the statute of limitation was therefore not tolled after that date, resulting in the Ben Hill County case being time-barred. In Case Nos. A24A1619 and A24A1670, Bo argues that the Ben Hill County case against him is time-barred and amounts to double jeopardy. Because we conclude that law enforcement had probable cause to arrest the two men by late November 2005, we reverse in Case Nos. A24A1618 and A241619 and dismiss Case No. A24A1670 as moot.

On appeal from a trial court's ruling on a plea in bar, "we accept the trial court's findings on disputed facts and witness credibility unless they are clearly erroneous, but independently apply the law to the facts." (Citation and punctuation omitted.) *Duke v. State*, 298 Ga. App. 719, 720 (1) (681 SE2d 174) (2009). The relevant facts as to the information law enforcement possessed at particular times between 2005 and 2017 are not in dispute, however.

2

(1) *November 2005: Garland Lott, Morgan Report, and America's Most Wanted Tip.* At the hearing on the plea in bar, Garland Lott testified that while at a party in a Fitzgerald pecan orchard in November 2005, he asked Bo and Ryan, his high school classmates who were sitting in a truck, "what they thought happened[.]" The men responded that "they killed [Grinstead] and burned her," and repeated that "we killed that bitch and burned her body." Lott testified that this was said "in a joking manner," that he did not believe them at first, and that Bo had a reputation for "outlandish statements."

Nonetheless, Lott took the matter seriously enough to go to his adult friends, Andy and Jannis Paulk, the next day, naming the two men and signing a statement that Jannis prepared for him. That same evening, Irwin County deputies Allen Morgan and Nelson Paulk (Andy's brother) came to the Paulk house, where they spoke to Lott and collected his statement. That same evening, Lott and the Paulks accompanied the two deputies to the pecan orchard, but they did not see a burn site there. Deputy Morgan also testified that he called GBI Agent Dominic Turner to notify him that Lott's

statement was available for pickup the following morning and that Morgan gave him the statement then.[2]

Deputy Morgan's report, dated November 8, 2005, stated that the Paulks came to his house that week and reported receiving a tip on a tip line administered by Jannis that a person named "Bo Dukes" had said at a party that "Ryan Duke" had "showed up at a pecan orchard in Fitzgerald [Ben Hill County] with the body of Tara Grinstead" and that the two men placed the body in a "fire pit and burnt it." The document did not name Lott and contained the additional information that "Ryan Duke" had broken into Grinstead's house on the night she disappeared.[3]

On November 12, 2005, the America's Most Wanted (AMW) hotline received a tip from an unidentified caller that gave the names "Ryan Duke or Dukes," "Bo Duke or Dukes," the information about the break-in, and the assertion that the two men had burned Grinstead's body at "a place where the kids hang out." GBI Agent

---

[2] Lott's statement was later lost.

[3] According to Lott and Andy Paulk, the Morgan report was incorrect in a number of ways, including that the Paulks did not go to Morgan's house and that the Dukes statement was not received on the tip line (which Jannis set up and monitored).

Rothwell was the point of contact for this tip, which was faxed to the GBI, and he called the Morgan report and the AMW tip "very consistent."

(2) *July 2008: Agent Leah Lightner investigative reports.* In these summaries, GBI Agent Leah Lightner identified Lott as the case's first source and reported that "the boys' last names were Duke, and they may have lived in the Pleasure Lake area of Irwin County." A second document stated that Andy Paulk "felt that law enforcement should look at the Duke boys," "Ryan Duke and Bo Duke [sic]," who "might have lived [together] off Pleasure Lake." The report repeats the story about how the two men said that they "had killed [Grinstead], put her in a car and burned her," including the conclusion that they "were just talking trash."

(3) *June 2016: John McCullough's statement to Agent Shoudel repeating Bo's admission.* GBI Agent Jason Shoudel testified that a basic training friend of Bo's, John McCullough, contacted Shoudel in June 2016 and told him that "when he was in the [Ocilla] area riding around with [Bo]," the two men saw missing persons posters and "began to talk" about the Grinstead case, during which Bo confided in McCullough, who he thought would "have [his] back," that "pecan wood burns really hot" and that "he assisted in the burning of [Grinstead's] body, but did not kill her." Acting on

5

this information from McCullough, Shoudel interviewed Bo, who denied "that there was any talk of [Grinstead]." Shoudel also obtained a DNA swab from Bo, which did not match the DNA taken from a glove found at Grinstead's house.

(4) *January 2017: Jeff Whipple statement to Agent Shoudel.* On January 20, 2017, Whipple, a friend of Bo's former girlfriend, Brooke Sheridan, told Agent Shoudel that Sheridan had told Whipple that Bo had told her that Bo had helped burn Grinstead's body.

(5) *February 7, 2017: Brooke Sheridan's statement to Agent Shoudel.* As a follow-up to the McCullough and Whipple statements, Shoudel interviewed Sheridan on February 7, 2017. Sheridan told Shoudel that Bo had told her that he had done "something terrible," had taken her to the pecan orchard, and told her that he had "assisted in destroying [Grinstead's] body and burning [it] and that he didn't do it, but he knew who did." Sheridan told Shoudel that Bo had told her the name of the other person, whom she identified as his "roommate at the time," named something like "Brad Luke or Ryan Duke," and that this other person had appeared at the pecan orchard with Grinstead's body. Sheridan also told Shoudel that in the course of his confession to her, Bo "walked off into the woods down a little path into the pine

trees" and returned. Sheridan showed Shoudel "exactly to the location" where Bo entered the woods in which Grinstead's remains were later found. Shoudel admitted that this information matched that given in the McCullough statement.

On February 19, 2017, Bo verified Sheridan's statement and named Ryan as the murderer. On February 21-22, 2017, Ryan admitted to Grinstead's murder.

In April 2017, Ryan was charged in Irwin County with malice murder, two counts of felony murder, aggravated assault, burglary, and concealing the death of another. In May 2022, Ryan was brought to trial in Irwin County. During trial, the State cross-examined Ryan and argued to the jury, both over objection, that Ryan could no longer be prosecuted in Ben Hill County because the charges would be time-barred by OCGA § 17-3-1 (c). Ryan was found guilty of concealing the death of another, acquitted of the remaining charges (including murder), and, on May 23, 2022, sentenced to 10 years to serve. Eleven days later, on June 3, 2022, Ryan was indicted in Ben Hill County for concealing the death of another, hindering apprehension, concealment of facts, and tampering with evidence.

Case No. A24A1618

On June 10, 2022, Ryan filed his plea in bar asserting that the charges were time-barred and that his due process rights had been violated. Evidence introduced at the hearing on the plea included an affidavit from a juror stating that the Irwin County jury had "discussed the fact that [he] could no longer be charged for any crimes in Ben Hill County based on the prosecutor's statements" and had initially agreed that Ryan "could not be found guilty of concealing the death . . . because the crime did not occur in Irwin County." Nonetheless, the Irwin County jury returned a guilty verdict on the charge of concealing Grinstead's death.

After the hearing, the trial court entered an order including the following findings of fact concerning Ryan's plea:

(1) A tipster, not yet identified as Lott, had "overheard" the men's confession at the party that they had killed Grinstead and burned her body, with the tipster also giving directions to the burn site. According to the tip, Ryan had "entered Grinstead's home using a pin to open the back door and waited for her to come in." Investigators had found "no evidence" of the crime, however, after aerial and ground searches of the pecan orchard.

(2) Agent Rothwell conceded that both men were known to law enforcement as of 2008 and that the GBI should have followed up on the 2005 information but did not.

(3) Sheridan was not credible because she was an ex-girlfriend, because she was "unsure" as to who had actually killed Grinstead, and because her account had no corroboration other than Lott's and Dukes's statements.

(4) Law enforcement officers on the case, including the Irwin County sheriff, Agent Lightner, and Agent Shoudel, did not believe that they had probable cause to arrest in late 2005. Likewise, Agent Rothwell believed that he was "never in a position to issue an arrest warrant" before 2017.

After crediting these officers' testimony, the trial court concluded that the State had probable cause as to both men only as of Bo's confession on February 19, 2017, and that due to the 473-day tolling associated with the COVID-19 pandemic, the case against Ryan was not barred by the statute of limitation. The trial court also concluded, without making any factual findings, that the State's comments at the Irwin County trial concerning the running of the statute in Ben Hill County did not prejudice Duke.

1. As the parties agree, Case No. A24A1618's appeal from the trial court's denial of Ryan's plea in bar concerns the application of OCGA § 17-3-1 (c), which provides that

> prosecution for felonies other than those specified in subsections (a), (b), and (d) of this Code section [including murder, crimes punishable by death or life imprisonment, or rape] shall be commenced within four years after the commission of the crime[.]

OCGA § 17-3-2 provides in relevant part that "[t]he period within which a prosecution must be commenced under Code Section 17-3-1 . . . does not include any period in which: . . . (2) The person committing the crime is unknown or the crime is unknown[.]" This Court recently summarized the law concerning the purpose of the statute of limitation and the State's burden to prove that a tolling exception applies:

> In criminal cases, the statute of limitation runs from the time of the criminal act to the time of indictment. Criminal statutes of limitation are supposed to protect people from having to defend against charges for long-past conduct as to which the basic facts may have become obscured by the passage of time[,] so they are construed liberally in favor of repose. And the State bears the burden to prove that the indictment issued within the applicable limitation period or, if it did not, that a tolling exception applies.

(Punctuation and citation omitted.) *State v. McClendon*, 362 Ga. App. 322, 325 (868 SE2d 459) (2022); see also *Riley v. State*, 305 Ga. 163, 167 (3) (824 SE2d 249) (2019). With regard to the unknown person tolling provision, the identity of a perpetrator becomes "known" to the State for purposes of the running of the statute of limitation "*when the State becomes aware of facts that give rise to probable cause* to arrest that person for the crime." (Emphasis supplied.) *McClendon*, 362 Ga. App. at 325.

To prove the unknown-person exception stated in OCGA § 17-3-2 (2), the State "must show that the facts within its knowledge . . . were not enough to lead a reasonably prudent person to identify the defendant as the perpetrator until a time that, relative to the indictment, was within the limitation period." *McClendon*, 362 Ga. App. at 326. "Probable cause exists when the facts known to the State could lead a reasonably prudent person to conclude that there is a 'probability' – more than mere suspicion, but less than absolute certainty – that the defendant committed the offense." Id., citing *Hughes v. State*, 296 Ga. 744, 749 (2) (770 SE2d 636) (2015). "Because the standard for probable cause depends on what a reasonable officer could have concluded from those facts and circumstances, the standard of probable cause is an objective one, and the subjective thinking of the actual officers in a particular case

11

is not important." (Footnote omitted.) *Hughes*, 296 Ga. at 749 (2). It follows that "*[i]f the known facts would allow prudent persons to draw differing conclusions on this point, probable cause exists*." (Emphasis supplied.) *McClendon*, 362 Ga. App. at 326.

As a preliminary matter, we note that the standard to apply to the question of whether probable cause exists is an objective one, and we are not bound by the subjective beliefs of the investigating officers. Tolling of the statute of limitation cannot be based on the "subjective opinion of the [law enforcement officer or] district attorney as to whether there was enough evidence to file charges against a particular person." *Jenkins v. State*, 278 Ga. 598, 603 (1) (A) (604 SE2d 789) (2004). Accordingly, the trial court's reliance on the officers' subjective beliefs as to when they had probable cause to arrest is misplaced.

Viewed objectively, the evidence does not support the trial court's conclusion that Lott's 2005 statement given to law enforcement (both local and the GBI) was insufficient to establish probable cause. In that statement, Lott recounted how Bo and Ryan admitted to killing Grinstead and burning her body. As time went on, moreover, each piece of information – hearsay or not, anonymous or not – further corroborated the detailed information that the police had already received. Bo's June 2016

12

statement to McCullough that he helped destroy Grinstead's body, for example, was also sufficient, in the context of the information already received, to provide officers with probable cause as to at least some of the charges against Ryan. See *White v. State*, 307 Ga. 601, 602-604 (2) (837 SE2d 838) (2020) (probable cause may be established by hearsay and existed when defendant "behaved oddly" and told a family member about a murder); *Connell v. State*, 131 Ga. App. 213, 214 (1) (205 SE2d 513) (1974) (affidavit supporting application for search warrant was adequate when a second tip concerning a location already under surveillance was made by a reliable informant).

Under these circumstances, and given that the totality of facts known to law enforcement by late November 2005 would "allow prudent persons to draw differing conclusions on this point," we hold that "probable cause exist[ed]" as to Ryan no later than that date. *McClendon*, 362 Ga. App. at 326. To conclude otherwise would allow the State, as here, to "build a case against a non-murder suspect for five or ten years and then file charges when it believes that it has obtained sufficient evidence by claiming that the statute of limitations was tolled until that moment," thus "permit[ting] the [tolling] exception to swallow the rule [of limitation]." *Jenkins*, 278 Ga. at 603 (1) (A). It follows that the trial court erred when it denied Ryan's plea in

bar under OCGA § 17-3-2 (2) concerning the June 2022 Ben Hill County charges. See

*McClendon*, 362 Ga. App. at 327 (affirming grant of plea in bar when doubts about a

defendant's denials "supports the determination that a reasonably prudent person .

. . would have believed that it was probable – though not necessarily certain – that [the

defendant] was the thief"); *Jenkins*, 278 Ga. at 603 (1) (A) (affirming dismissal of non-

murder charges when law enforcement had actual knowledge of the suspect's identity

but did not indict him until more than seven years later).

2. In light of this result, we need not address Ryan's assertion that arguments

made at the Irwin County trial deprived him of due process concerning the June 2022

Ben Hill County charges.

Case Nos. A24A1619, A24A1670

In June 2017, Bo was charged in Ben Hill County with concealing the death of

another, tampering with evidence, and hindering the apprehension of a criminal

arising from his 2005 activities. In August 2017, Bo was charged in Wilcox County

with two counts of making a false statement, concealing the death of another, and

hindering apprehension, all arising from his June 2016 interview with Agent Shoudel

(which took place after the McCullough statement). See *Dukes*, supra, 365 Ga. App.

14

at 248. He was later found guilty in Wilcox County and sentenced to 25 years to serve. Id.

On August 31, 2022, Bo filed two pleas in bar, which asserted that the Ben Hill County charges against him were time-barred and put him in double jeopardy. After the hearing described above, the trial court made findings of fact identical to those in Ryan's case, summarized above, and concluded that even assuming that law enforcement had probable cause to arrest Bo based on McCullough's June 2016 statement, they lacked probable cause to arrest Bo in 2005 such that the June 2017 indictment was filed within the four-year limitation period of OCGA § 17-3-2 (2). In the same order, the trial court denied Bo's double jeopardy plea on the ground that the Ben Hill County charges did not arise from the same course of conduct as the Wilcox County prosecution resulting in Bo's conviction. These appeals followed.

3. In Case No. A24A1619, and for the same reasons given in Division 1 above, we conclude that law enforcement had probable cause to arrest Bo as of late November 2005. We therefore reverse the trial court's denial of Bo's plea in bar concerning the June 2017 Ben Hill County charges because they were not filed within the four-year limitation period of OCGA § 17-3-2 (2).

4. Our reversal of the trial court's denial of Bo's plea in bar moots his appeal in Case No. A24A1670 concerning double jeopardy as an additional bar to the Ben Hill County charges.

*Judgments reversed in Case Nos. A24A1618 and A24A1619. Appeal dismissed in Case No. A24A1670. Markle and Davis, JJ., concur.*