A11A1881. ROYAL v. THE STATE.
(723 SE2d 118)

BOGGS, Judge.

In this interlocutory appeal, Luther Royal appeals from the trial court's order denying his motion to dismiss, special demurrer and motion to quash, and plea in bar with respect to Counts 1 through 16

---

(insurance fraud) and Count 19 (theft by taking) of the indictment. With regard to all specified counts, each of these motions asserted that the statute of limitation had expired because the State had actual knowledge of the crimes more than four years before indicting Royal. With regard to Count 19, Royal contended that the indictment fails to state "any factual basis to indicate how the alleged criminal acts were supposed to have been committed." For the reasons explained below, we reject Royal's statute of limitation argument as to all specified counts and dismiss as moot his claim with regard to Count 19 of the indictment.

1. Based upon the four-year statute of limitation applicable to the crimes with which he was charged, OCGA § 17-3-1 (c), his interpretation of the tolling period provided by OCGA § 17-3-2 (2), and the facts presented to the trial court, Royal contends that the trial court erred by denying his motion. We disagree.

> The appellate standard of review for a plea in bar asserting a statute of limitation defense is a de novo review of the issue[s] of law[ ]. As this ruling involves a mixed question of fact and law, we accept the trial court's findings on disputed facts and witness credibility unless they are clearly erroneous, but independently apply the law to the facts.

(Citation, punctuation and footnote omitted.) *State v. Campbell*, 295 Ga. App. 856 (673 SE2d 336) (2009). So viewed, the record shows that Royal received total and residual disability benefits for an injury he received in June of 2002. The policy was issued by New York Life and administered by Paul Revere Insurance Company through its umbrella company, UNUM Provident ("UNUM").

On May 3, 2006, an employee of Royal called UNUM's fraud hotline and reported that Royal was receiving disability payments even though he "was in the office all day conducting the same level of work he has . . . always conducted." She also reported that he took extended motorcycle trips and that "a surv[eillance] team would show significant activity." UNUM forwarded the tip to one of its investigators, who requested a copy of Royal's claims file from the UNUM claims representative assigned to it. He also talked with the tipster.

The investigator testified that he did not automatically believe the employee based on her word alone, but that after talking with the claims representative handling Royal's claim, they decided to conduct surveillance. Surveillance performed on three occasions in June 2006 did not confirm the tipster's allegations. After the surveillance failed to substantiate the tipster's report that a crime had been

committed, the investigator traveled to Georgia from Tennessee on July 5, 2006 to meet with the tipster and review any documents supporting her fraud claims. Based on documentation provided during that interview, the investigator believed he had some corroboration of the employee's allegations, but it was not "enough at that point" to report the suspected insurance fraud to the insurance commissioner. The investigator explained that he wanted supporting documents because

> [t]here's no way we could go on just the word of — an individual calling in telling us this. . . . [T]he company takes very seriously the relationship between the company and our insured. . . . [W]e realize that what my job leads to in many cases is what we're doing here today in the criminal process, so we take that very seriously and we're not going to make a harsh judgment or — or to turn somebody — throw somebody into that system when we don't have everything that we feel has convinced us that we have a reasonable suspicion that we need to do it and meet our mandatory reporting requirements.

After the interview of another witness on August 1, 2006, the investigator talked with an investigator with the Georgia Office of Insurance. On August 10, 2006, the insurance investigator filed a formal referral of suspected insurance fraud to the Georgia Office of Insurance.

Royal contends the specified counts[1] are barred by the four-year statute of limitation because the victim, UNUM, had actual knowledge of the crime at the time of the tip on May 3, 2006, and the State indicted him more than four years later on July 1, 2010. OCGA § 17-3-2 (2) provides that "[t]he period within which a prosecution must be commenced . . . does not include any period in which . . . [t]he person committing the crime is unknown or the crime is unknown."

Under this statute, "[t]he crime victim's knowledge of the crime is imputed to the State." *Campbell*, supra, 295 Ga. App. at 857. See also *Womack v. State*, 260 Ga. 21, 22 (3) (389 SE2d 240) (1990). But, the victim must have "actual knowledge, not constructive knowledge, of the crime. [Cit.]" *State v. Robins*, 296 Ga. App. 437, 439 (1) (674 SE2d 615) (2009). "The tolling period is not extinguished when

---

[1] The counts at issue allege that Royal committed insurance fraud by making specific false statements in claim forms submitted between February 9, 2004 and June 30, 2006. They also allege that the crimes were "unknown to the State until and after July 5, 2006."

the injured party *should have known*; rather, it ends when the injured party has actual knowledge of the crime." (Emphasis in original.) *Campbell*, supra, 295 Ga. App. at 858. In other words, there must be "knowledge of the act itself. [Cit.]" *Robins*, supra, 296 Ga. App. at 439 (1).

In this case, the record shows that the employee calling the fraud hotline may have had actual knowledge of the crime on May 3, 2006, but the defrauded insurance company, the victim, did not acquire actual knowledge of the specific acts constituting the crime until July 5, 2006. Based on these facts, the trial court did not clearly err by finding that the victim insurance company first had actual knowledge of the crime on July 5, 2006. See *Higgenbottom v. State*, 290 Ga. 198, 204 (719 SE2d 482) (2011) (interview of defendant during investigative process could not be equated with actual knowledge of perpetrator's identity); *Campbell*, supra, 295 Ga. App. at 858. Because the State filed its indictment against Royal less than four years later, it met its burden of proving the applicability of the tolling statute, *Merritt v. State*, 254 Ga. App. 788, 789 (1) (a) (564 SE2d 3) (2002), and the trial court did not err by rejecting Royal's statute of limitation defense.[2]

The Supreme Court's decision in *Jenkins v. State*, 278 Ga. 598 (604 SE2d 789) (2004), does not require a different result because in *Jenkins*, the State had actual knowledge of *both* the crime and the defendant's identity more than four years before indicting him. Id. at 600 (1). Specifically, the State had DNA test results identifying the defendant's DNA on a cigarette butt, "but the frequency [of the DNA evidence], 1/1000, was relatively low." Id. at 602 (1) (A). The district attorney did not believe this evidence was sufficient to indict the defendant and waited until an additional review of existing evidence more firmly identified the defendant before indicting him more than seven years later. Id. at 601-602 (1) (A). The Supreme Court affirmed the trial court's grant of the defendant's motion to dismiss the indictment, reasoning that

> [t]he tolling exception to the statute of limitations cannot be based upon the subjective opinion of the district attorney as to whether there was enough evidence to file charges against a particular person. Otherwise, there would be tolling of the statute of limitations for routine investigation into a crime; the State could build a case against a non-

---

[2] Our opinion in *State v. Bair*, 303 Ga. App. 183 (692 SE2d 806) (2010), is distinguishable because the issue presented in *Bair* did not turn on when the victim acquired actual knowledge of the crime. The cryptic language in *Bair* relied upon by Royal in this appeal is therefore nonbinding dicta.

murder suspect for five or ten years and then file charges when it believes that it has obtained sufficient evidence by claiming that the statute of limitations was tolled until that moment. Such a broad interpretation of the tolling period would permit the exception to swallow the rule. The evidence shows that the State had actual knowledge of [the defendant]'s identity as a suspect for the crimes shortly after they were committed, but it did not indict him until more than seven years had elapsed. Therefore, we affirm the trial court's ruling on the dismissal of the non-murder charges due to the expiration of the statute of limitations.

Id. at 603 (1) (A).

The question here is when the victim acquired actual knowledge of the specific acts constituting the crime, not *who* committed a known crime as in *Jenkins*. Our holding that the tolling period ended when the UNUM investigator obtained first-hand knowledge of the acts forming the crimes is analogous to the tolling period ending in *Jenkins* when the State received the DNA results first identifying the defendant in that case as the perpetrator.

2. Royal contends that Count 19 is fatally defective because "it is not sufficient to enable [him] to prepare for trial and respond to the charges against him." The State concedes the issue, and the trial court granted the State's motion to enter a nolle prosequi of Count 19 before the trial court received this court's order granting Royal's interlocutory application and before Royal filed his notice of appeal. Because the nolle prosequi was entered before Royal filed his notice of appeal, this issue is moot.

*Judgment affirmed. Mikell, P. J., and Dillard, J., concur.*

DECIDED FEBRUARY 7, 2012 — 

*Callaway, Neville & Brinson, William E. Callaway, Jr., William J. Neville, Jr.,* for appellant.

*Joseph F. Burford, Gary D. Bergman,* for appellee.