S12A1508. HARPER et al. v. STATE OF GEORGIA.

(738 SE2d 584)

HINES, Justice.

James R. Harper III, Jerry W. Chapman, and Jeffery L. Pombert bring this appeal from the trial court's orders denying their various motions challenging charges of theft and violation of the Georgia Racketeer Influenced and Corrupt Organizations ("RICO") Act, see OCGA § 16-14-1 et seq. The charges for which they have been indicted relate to property of Glock, Inc., and various entities associated with it, and the defendants raise issues regarding the relevant statutes of limitation. For the reasons that follow, we affirm in part, reverse in part, and remand the case to the trial court with direction.

On January 22, 2010, Harper, Chapman, and Pombert were jointly indicted and charged with violating the RICO Act through a pattern of "setting up entities and bank accounts and transferring Glock[1] assets and funds through and among various of these entities and accounts, [thereby] divert[ing] and attempt[ing] to divert Glock funds to their own use and control." There were ten other charges in the indictment; one count of attempted theft, two counts of theft that named all three men, and seven counts of theft naming only Harper and Chapman. According to the indictment, Harper, an attorney, was hired in 2000 by the Georgia corporations of Glock, Inc. and Consult-invest, Inc., as well as Mr. Gaston Glock, to, among other things, investigate allegations of possible wrongdoing by one or more persons previously associated with these corporations, and Harper hired Chapman and Pombert to assist him (collectively, "the defendants"). In the course of their work for the Glock entities, it is alleged, the defendants conspired to take more than $3,000,000 of funds belonging to one or more of the various Glock entities, as well as from other corporations and entities associated with the Glock enterprises, and engaged in acts in furtherance of that conspiracy.

The defendants[2] filed a general demurrer, special demurrer, plea in bar, and motion to dismiss, asserting various reasons why the

---

[1] Count 1 of the indictment alleges that Harper, Chapman, and Pombert, through a pattern of racketeering activity took, or attempted to take, approximately $3,000,000 in monies or property from "Glock Inc., and/or Consultinvest, Inc., both Georgia corporations located in Cobb County, Georgia, and/or from Mr. Gaston Glock, (collectively referred to as 'Glock') with the intention of depriving the owner of the same." Most of the indictment's later references to the property alleged to be taken were to "Glock funds," apparently intending to encompass any and all such entities. This language was attacked by special demurrer, but the denial of the defendants' special demurrer on this ground is not enumerated as error in this appeal. See OCGA § 5-6-34 (d).

[2] These motions state that they are filed on behalf of Harper and Pombert; the notice of appeal states that it is filed on behalf of all three defendants.

558

indictment and prosecution were infirm, primarily that the relevant statutes of limitation had expired. The trial court denied the requested relief, and the defendants sought an interlocutory appeal in this Court, which was granted.

Crucial to analyzing the issues in this case is an understanding of the various statutes of limitation in question. Generally, prosecutions for RICO violations must begin within five years of the termination of any violation, OCGA § 16-14-8,[3] and prosecution for charges specified in Counts 2 through 11 of the indictment must be commenced within four years of the commission of those crimes. OCGA § 17-3-1 (c).[4] Those periods of time, however, are tolled if the "person

---

[3] OCGA § 16-4-8 reads:

Notwithstanding any other provision of law, a criminal or civil action or proceeding under this chapter may be commenced up until five years after the conduct in violation of a provision of this chapter terminates or the cause of action accrues. If a criminal prosecution or civil action is brought by the state to punish or prevent any violation of this chapter, then the running of this period of limitations, with respect to any cause of action arising under subsection (b) or (c) of Code Section 16-14-6 which is based upon any matter complained of in such prosecution or action by the state, shall be suspended during the pendency of the prosecution or action by the state and for two years thereafter.

[4] OCGA § 17-3-1 reads:

(a) A prosecution for murder may be commenced at any time.

(b) Except as otherwise provided in Code Section 17-3-2.1, prosecution for other crimes punishable by death or life imprisonment shall be commenced within seven years after the commission of the crime except as provided by subsection (d) of this Code section; provided, however, that prosecution for the crime of forcible rape shall be commenced within 15 years after the commission of the crime.

(c) Except as otherwise provided in Code Section 17-3-2.1, prosecution for felonies other than those specified in subsections (a), (b), and (d) of this Code section shall be commenced within four years after the commission of the crime, provided that prosecution for felonies committed against victims who are at the time of the commission of the offense under the age of 18 years shall be commenced within seven years after the commission of the crime.

(d) A prosecution for the following offenses may be commenced at any time when deoxyribonucleic acid (DNA) evidence is used to establish the identity of the accused:

(1) Armed robbery, as defined in Code Section 16-8-41;

(2) Kidnapping, as defined in Code Section 16-5-40;

(3) Rape, as defined in Code Section 16-6-1;

(4) Aggravated child molestation, as defined in Code Section 16-6-4;

(5) Aggravated sodomy, as defined in Code Section 16-6-2; or

(6) Aggravated sexual battery, as defined in Code Section 16-6-22.2; provided, however, that a sufficient portion of the physical evidence tested for DNA is preserved and available for testing by the accused and provided, further, that if the DNA evidence does not establish the identity of the accused, the limitation on prosecution shall be as provided in subsections (b) and (c) of this Code section.

(e) Prosecution for misdemeanors shall be commenced within two years after the commission of the crime.

committing the crime is unknown or the crime is unknown[.]" OCGA § 17-3-2 (2).[5] "The knowledge component of th[e] exception [found in OCGA § 17-3-2 (2)] has been construed as requiring the State to have actual knowledge of the identity of the alleged perpetrator of the crime. [Cit.]" *Higgenbottom v. State*, 290 Ga. 198, 204 (3) (719 SE2d 482) (2011). However, the actual knowledge of a crime victim about the crime is imputed to the State for purposes of applying the tolling provision of OCGA § 17-3-2 (2). *Royal v. State*, 314 Ga. App. 20, 22-23 (723 SE2d 118) (2012). See also *Womack v. State*, 260 Ga. 21, 22 (3) (389 SE2d 240) (1990).

In addition, limitation periods for prosecutions are tolled under OCGA § 17-3-2.2[6] "if the victim is a person who is 65 years of age or older, . . . until the violation is reported to or discovered by a law enforcement agency, prosecuting attorney, or other governmental agency . . . ." Each count of the indictment asserted that OCGA § 17-3-2.2 applied because one of the alleged victims, Mr. Glock, was over the age of 65 at the time each alleged offense occurred. Each count also asserted that the "accused defendants and crime were unknown to the State, as contemplated by [OCGA] § 17-3-2 (2) until" some date that varied between June 8, 2007 and the month of December 2009, depending upon the count.

The indictment was returned on January 22, 2010. The RICO count alleged that acts of racketeering activity occurred through February 17, 2009, within five years of the return of the indictment.

---

[5] OCGA § 17-3-2 reads:
> The period within which a prosecution must be commenced under Code Section 17-3-1 or other applicable statute does not include any period in which:
> (1) The accused is not usually and publicly a resident within this state;
> (2) The person committing the crime is unknown or the crime is unknown;
> (3) The accused is a government officer or employee and the crime charged is theft by conversion of public property while such an officer or employee; or
> (4) The accused is a guardian or trustee and the crime charged is theft by conversion of property of the ward or beneficiary.

[6] OCGA § 17-3-2.2 reads:
> In addition to any periods excluded pursuant to Code Section 17-3-2, if the victim is a person who is 65 years of age or older, the applicable period within which a prosecution must be commenced under Code Section 17-3-1 or other applicable statute shall not begin to run until the violation is reported to or discovered by a law enforcement agency, prosecuting attorney, or other governmental agency, whichever occurs earlier. Such law enforcement agency or other governmental agency shall promptly report such allegation to the appropriate prosecuting attorney. Except for prosecutions for crimes for which the law provides a statute of limitations longer than 15 years, prosecution shall not commence more than 15 years after the commission of the crime.

See OCGA § 16-14-8. The counts of theft and attempted theft were alleged to have occurred on various dates between November 6, 2001, and April 11, 2003, all of which were more than four years prior to the return of the indictment. See OCGA § 17-3-1 (c). Accordingly, the State's essential argument is that, as Mr. Glock was a victim over the age of 65, by operation of OCGA § 17-3-2.2, the statute of limitation applicable to theft and attempted theft charges did not begin to run until the offense was reported to law enforcement personnel, which dates were within four years of the return of the indictment.

1. The defendants contend that OCGA § 17-3-2.2 violates the Equal Protection Clauses of both the Federal and State Constitutions by treating them differently from similarly situated defendants on an arbitrary basis, exposing them to prosecution for a longer period of time based solely on the age of the alleged victim. When defendants raise challenges based upon the Equal Protection Clauses of both the State and Federal Constitutions, "because the protection provided in the Equal Protection Clause of the United States Constitution is coextensive with that provided in Art. I, Sec. I, Par. II of the Georgia Constitution of 1983, we apply them as one." *Fair v. State*, 288 Ga. 244, 246 (1) (A) (702 SE2d 420) (2010) (Citation and punctuation omitted).

> In deciding an equal protection challenge, the level of scrutiny applied by the court depends on the nature of the distinction drawn by the legislation at issue. If neither a suspect class nor a fundamental right is implicated, the most lenient level of judicial review — "rational basis" — applies. See *Ambles v. State*, 259 Ga. 406, 407 (383 SE2d 555) (1989). Rational basis review involves a two-prong evaluation of the challenged statute. "Initially, the claimant must establish that he is similarly situated to members of the class who are treated differently from him. Next, the claimant must establish that there is no rational basis for such different treatment." *Drew v. State*, 285 Ga. 848, 850, n. 3 (684 SE2d 608) (2009) (citation omitted). And because " 'the legislation is presumptively valid, the claimant has the burden of proof as to both prongs.' " Id. (citation omitted).

*Bunn v. State*, 291 Ga. 183, 186 (2) (b) (728 SE2d 569) (2012).

The defendants concede that the age of the alleged victim does not implicate a suspect class or fundamental right, and thus rational basis review is appropriate. *Bunn*, supra. "Under the rational basis test, a court will uphold the statute if, under any conceivable set of

facts, the classifications drawn in the statute bear a rational relationship to a legitimate end of government not prohibited by the Constitution." *Ga. Dept. of Human Resources v. Sweat*, 276 Ga. 627, 630 (3) (580 SE2d 206) (2003). Equal protection is violated only if the means adopted by the statute, or the classifications used, are irrelevant to the government's legitimate objective, or are altogether arbitrary. *Rainer v. State of Ga.*, 286 Ga. 675, 677-678 (2) (690 SE2d 827) (2010). OCGA § 17-3-2.2 was enacted as part of the Georgia Protection of Elder Persons Act of 2000 ("Act"). See Ga. L. 2000, p. 1085. The Act also addressed crimes against those persons over the age of 65 in dependent care, and crimes committed by the breach of fiduciary obligations against those over the age of 65. See OCGA §§ 16-5-100, 16-9-6. As has been recognized, "[t]he care of aged persons in our society is a matter of great public concern." *Associated Health Systems, Inc. v. Jones*, 185 Ga. App. 798, 800 (1) (366 SE2d 147) (1988). The effect of OCGA § 17-3-2.2 is to provide that criminals who prey upon the elderly may face prosecution for their crimes even though the crimes are not timely reported to law enforcement officers. This is rationally related to the protection of the elderly, who may not be in a position to discover or report crimes committed against them.

Nonetheless, the defendants urge that the simple use of an age classification, without more, is overly broad, and that the General Assembly should have included some additional requirement of impaired capacity on the part of the victim before any extension of the statute of limitation could take effect, and note that the General Assembly did not enact a similar statute governing limitation periods for civil actions. However, what the defendants advance is not the test. Rather, the General Assembly "must have substantial latitude to establish classifications that roughly approximate the nature of the problem perceived." *Love v. Whirlpool Corp.*, 264 Ga. 701, 704 (1) (449 SE2d 602) (1994) (Citation and punctuation omitted). Although there are undoubtedly differences between individuals who fall into a certain age category that may make them less in need of protection under a certain law, that does not render infirm any age classification that does not recognize such differences. " 'It is not necessary that the classification scheme be the perfect or the best one . . . .' [Cit.]" Id. The mere fact that the classification could have been more narrowly drawn does not render it constitutionally infirm. Id. Applying the applicable test, the defendants have failed to meet their burden of showing that there is no rational basis for the classification chosen in OCGA § 17-3-2.2, and we conclude that the classification does not violate the Equal Protection Clauses of the State and Federal Constitutions.

2. In the plea in bar, the defendants asserted that OCGA § 17-3-2.2 did not necessarily apply in this case because, as to at least some counts of the indictment, the alleged acts involved theft from a corporation or other entity, and not from Mr. Glock. In its order denying the plea in bar, the trial court correctly noted that OCGA § 17-3-2.2 was constitutional. See Division 1, supra. However, the trial court then observed that Mr. Glock was a shareholder in, or a beneficial owner of, the entity from which the property in each count was alleged to be taken, and deemed that this fact established him to be a potential victim within the meaning of OCGA § 17-3-2.2, so that the statute could be applied.

We believe that the trial court erred in its analysis. Rather, to apply the tolling provision of OCGA § 17-3-2.2, it must be shown that the victim of the crime is a person over the age of 65. As noted above, the protection of such persons is the purpose of the statute. See Division 1, supra. OCGA § 17-3-2.2 offers no protection to the interest of any corporation or other entity which is not "a person who is 65 years of age or older." OCGA § 17-3-2.2. This is in keeping with the principle that, generally, corporations are separate legal entities from their shareholders. See *Miller v. Harco Nat. Ins. Co.*, 274 Ga. 387, 391-392 (3) (552 SE2d 848) (2001). Accordingly, in order to apply the statute of limitation tolling provision found in OCGA § 17-3-2.2, it must be shown that there was a theft directly from Mr. Glock, i.e., that the property taken was his, and not that of a corporation or other entity with a separate legal identity from Mr. Glock. Mr. Glock is the only person "65 years of age or older" alleged in the indictment to be a victim. Thus, if it is shown that the property taken in any theft was, at the time of the theft, in fact the property of Glock, Inc., Consult-invest, Inc., or any other entity not a person over the age of 65, OCGA § 17-3-2.2 cannot be applied.

The State argues that this would conflict with the settled principle that "[T]hose who steal will not be permitted to raise nice and delicate questions as to the title of that which is stolen. . . . So far as the thief is concerned, he cannot question the title of the apparent owner." (Citation and punctuation omitted). *Bell v. State*, 276 Ga. 206, 208 (4) (576 SE2d 876) (2003). However, this principle relates to the question of whether the indictment sufficiently informs the defendant of the charges against him. See *Spurlin v. State*, 222 Ga. 179, 182-183 (7) (149 SE2d 315) (1966); *Ingram v. State*, 137 Ga. App. 412, 414-415 (3) (b) (224 SE2d 527) (1976). That is not at issue; there is no dispute about whether the defendants have been properly informed as to what alleged crimes they must defend, but whether, under the procedures the General Assembly has set forth for prosecuting such

alleged crimes, the State was empowered to commence the prosecution when it did. Faced with a statute that governs a calculation of time based upon the age of "the victim," it must be established that the victim falls into the protected class or the statute does not apply. For the purposes of OCGA § 17-3-2.2, the question is not whether the property involved is "property of another," see OCGA § 16-8-1 (3), but whether the property alleged to be stolen is that of a person 65 years of age or older.

3. The defendants also contend that the trial court erred in finding that Counts 2 through 11[7] of the indictment were not barred by the statute of limitation. In analyzing this issue, the trial court relied upon the erroneous conclusion that OCGA § 17-3-2.2 applied, and therefore concluded that the date that each crime became "known" within the meaning of OCGA § 17-3-2 (2) was the date upon which each crime was reported to law enforcement officers. But, as to any count of the indictment for which it cannot be shown that Mr. Glock was the owner of the property allegedly stolen, the correct date to apply in analyzing the statute of limitation is the date that the crime became known to the victim of the crime. See *Royal*, supra. Thus, in analyzing this issue as to these counts, the trial court made no finding on the threshold determinations.

Although the defendants point to evidence that, in May of 2003, an auditor from a company unaffiliated with any Glock enterprise raised questions regarding some of the fund transfers at issue and considered them "overbillings" to be recovered, that does not establish May 2003 as a time at which the crimes ceased to be "unknown" within the meaning of OCGA § 17-3-2 (2). "At trial, the burden is unquestionably upon the [S]tate to prove that a crime occurred within the statute of limitation, or, if an exception to the statute is alleged, to prove that the case properly falls within the exception. [Cit.]" *Lee v. State*, 289 Ga. 95, 97 (709 SE2d 762) (2011) (Citation and punctuation omitted). " 'The fact that the issue is determined pre-trial does not relieve the State of this burden.' [Cit.]" *State v. Conzo*, 293 Ga. App. 72, 74 (1) (666 SE2d 404) (2008). When reviewing a trial court's ruling on a plea in bar, the trial court's findings on disputed facts and witness credibility are affirmed unless those findings are clearly erroneous. Id. at 73. See also *Jenkins v. State*, 278 Ga. 598, 604 (1) (604 SE2d 789) (2004). In applying an improper analysis, the trial court failed to make the necessary factual findings. Accordingly, the case must be remanded for a determination, under the proper standard, of when the statutory limitation began.

---

[7] All but one of these counts alleged theft; the other count alleged an attempted theft.

4. The defendants assert that the trial court erred in denying the plea in bar regarding the RICO count of the indictment on statute of limitation grounds. Criminal prosecution for a RICO violation "may be commenced up until five years after the conduct in violation of a provision of this chapter terminates or the cause of action accrues." OCGA § 16-14-8. See *Conzo*, supra; *Young v. State*, 205 Ga. App. 357, 363 (5) (422 SE2d 244) (1992). The defendants contend that the State failed to show any qualifying act occurring within that time frame. However, the State produced some evidence that one or more of the alleged conspirators committed acts that included mail fraud and obstruction of justice, see OCGA § 16-14-3 (9) (A) (xxix) and (9) (B), as the trial court specifically found. This finding is not clearly erroneous. See *Jenkins*, supra; *Conzo*, supra. Accordingly, the trial court did not err in denying the plea in bar on this ground.

*Judgment affirmed in part and reversed in part, and case remanded with direction. All the Justices concur, except Melton, J., who dissents as to Division 2. Nahmias, J., disqualified, and Blackwell, J., not participating.*

MELTON, Justice, dissenting in part.

Because I believe that the indictment sets forth a potential claim covered by the tolling provision of OCGA § 17-3-2.2, I must respectfully dissent from Division 2 of the majority opinion.

OCGA § 17-3-2.2 provides:

> In addition to any periods excluded pursuant to Code Section 17-3-2, if the victim is a person who is 65 years of age or older, the applicable period within which a prosecution must be commenced under Code Section 17-3-1 or other applicable statute shall not begin to run until the violation is reported to or discovered by a law enforcement agency, prosecuting attorney, or other governmental agency, whichever occurs earlier.

The indictment brought against the defendants in this case states the following:

> Beginning [on] approximately May 1, 2000[,] and continuing through approximately February 27, 2009, James R. Harper, III, Jerry W. Chapman and Jeffrey L. Pombert in concert with one another and with others, did, through a pattern of racketeering activity unlawfully take and/or endeavor to take the property and/or money of another, in the approximate amount of $3,000,000.00, from Glock, Inc., and/or Consultinvest, Inc., both Georgia corporations located in

Cobb County, Georgia, and/or from Mr. Gaston Glock, (collectively referred to as "Glock") with the intention of depriving the owner of the same.

The question, then, is whether the indictment sufficiently sets forth a crime committed against a victim who is 65 or older. Theft by deception is committed when one "obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property." OCGA § 16-8-3 (a). As the trial court pointed out, evidence showed that Gaston Glock moved over $800,000 in individual property into certain corporate accounts *at the direction of Harper*. It is alleged that Harper did so in order to have convenient access to these funds for the purpose of misappropriating them. See OCGA § 16-8-3 (b) (defining deception). This would appear to be exactly the type of theft by deception committed against a person 65 or older which OCGA § 17-3-2.2 targets. Gaston Glock, according to the indictment, was victimized by Harper's scheme to obtain at least $850,000 of Harper's separate funds. If this allegation proves to be true, Harper should not be allowed to circumvent the tolling provision of OCGA § 17-3-2.2 simply by convincing Gaston Glock to place property in a corporate account. Therefore, at least as to these allegations, the tolling provision of OCGA § 17-3-2.2 must be applied.

DECIDED FEBRUARY 18, 2013 —
RECONSIDERATION DENIED MARCH 18, 2013.

*Garland, Samuel & Loeb, Donald F. Samuel, Thompson & Singer, Janice Singer-Capek, Kimberly K. Frye, George A. Koenig*, for appellants.

*Patrick H. Head, District Attorney, John C. Butters, Anna G. Cross, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Nels S. D. Peterson, Assistant Attorney General*, for appellee.