**FOURTH DIVISION**
**ELLINGTON, P. J.,**
**BRANCH and MERCIER, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**September 20, 2016**

# In the Court of Appeals of Georgia

A16A1184. THE STATE v. CROWDER.

MERCIER, Judge.

On October 24, 2014, the State filed an indictment against Curtis Crowder, alleging that between January 1, 2004 and June 30, 2010 he committed the offenses of unlawful conversion of sales and use taxes, theft by taking, and false swearing. Crowder filed a motion for plea in bar, contending that the indictment was barred by the applicable four-year statute of limitation. After an evidentiary hearing, the trial court entered an order granting Crowder's motion. The State appeals, contending that the statute of limitation was tolled pursuant to OCGA § 17-3-2 because the crimes were unknown to the State until at least October 29, 2010. See OCGA § 5-7-1 (a) (3) (pertinently, permitting an appeal by the State from an order sustaining a plea in bar). Finding no error, we affirm.

The appellate standard of review for a plea in bar asserting a statute of limitation defense is a de novo review of the issue of laws. As this ruling involves a mixed question of fact and law, we accept the trial court's findings on disputed facts and witness credibility unless they are clearly erroneous, but independently apply the law to the facts.

*State v. Conzo*, 293 Ga. App. 72, 73 (666 SE2d 404) (2008) (citation omitted).

The evidence shows that Crowder owned and operated Syntellus Dataworks, LLC ("Syntellus"), which sold computer hardware and information technology services. In 2003, Crowder applied for and received a sales tax identification number from the Georgia Department of Revenue ("DOR") in 2003 for his business, showing his intent to collect sales tax. During the spring of 2010, Joe Paris, a tax specialist employed by the DOR, began conducting a routine sales tax audit of Syntellus. During the course of the audit, Paris's co-worker and office-mate, Sharon Martin, was processing a sales tax refund request submitted by SunTrust Bank when, in August 2010,[1] she discovered that Syntellus had collected sales tax from customer SunTrust

---

[1] SunTrust made the refund request pursuant to a State technology rebate program, seeking a refund of sales taxes SunTrust paid for computer equipment purchased from Syntellus. To apply for the refund, SunTrust was required to obtain a certificate wherein the seller of the equipment stated under oath that he had collected the sales tax, had remitted the sales tax to the DOR, and was declining to claim the refund for itself. SunTrust submitted three such certificates to the DOR, which Crowder signed in April 2009 and January 2010. These certificates form the

2

Bank in 2006, 2007, and 2008, but had not remitted any sales tax to the State. Martin knew that Paris was conducting a sales tax audit of Syntellus, so she informed Paris in August 2010 about SunTrust's sales tax refund request, told him that Crowder had signed refund certificates indicating that he had collected and remitted taxes in connection with the sales, and informed him of her discovery that Crowder had not filed any sales tax returns and had not remitted any sales tax. Martin sent the signed certificates to Paris in August 2010. The DOR denied the refund request because no sales tax payments had been remitted.

On September 8, 2010, Paris met with Crowder, at which time Crowder showed him copies of Syntellus's Georgia sales tax returns for all audit years from 2004 forward. Paris testified that the returns showed sales tax due from Syntellus to the DOR and that, by the end of that meeting, he knew that Crowder had collected the sales tax and had failed to remit it. Paris asked Crowder at the meeting why he had not remitted the sales tax and stated that they would "work out" repayment terms. Paris also testified that he knew in July 2010 that there had been no sales tax payments made on Syntellus's account since the business opened in 2003; that was Paris's reason for expanding the audit period back to January 1, 2004.

basis of Counts 3 through 5 of the indictment (false swearing). See infra.

3

On October 1, 2010, the DOR sent Crowder a notice to produce documents related to Syntellus's sales tax compliance. In response, Crowder sent summaries of sales rather than details of individual transactions. Finding Crowder's response insufficient, the DOR issued a tax assessment on October 29, 2010; the assessment contained an estimate of Syntellus's sales tax liability based on the sales summaries. Crowder protested the assessment and submitted detailed invoices to the DOR in January 2011. According to the State, "[i]t was only upon receipt of this 'invoice detail' level of information that the Department of Revenue was able to accurately analyze Syntellus' sales tax liability and determine whether any crime had been committed."

On October 24, 2014, the State filed the indictment against Crowder on one count of unlawful conversion of funds collected for the benefit of the State (OCGA § 48-1-5), one count of theft by taking (OCGA § 16-8-2), and three counts of false swearing (OCGA § 16-10-71). As to the conversion charge (Count 1) and the theft charge (Count 2), the indictment alleged that between January 1, 2004 and June 30, 2010, Crowder converted and appropriated sales and use taxes Syntellus collected from retail customers. As to the false swearing charges (Counts 3, 4 and 5), the indictment alleged that Crowder executed three forms under oath, titled "Waiver of

4

Vendor's Rights for Refund of the Georgia Department of Revenue" ("waiver forms"), for the years 2006, 2007, and 2008, on which Crowder stated that the sales tax shown was collected from SunTrust Bank and remitted to the DOR. More specifically, Count 3 alleged that Crowder made the false statements on or about April 23, 2009, and Counts 4 and 5 alleged that he made the false statements on January 19, 2010. The indictment asserted that the five counts did not fall outside the four-year statute of limitation period otherwise applicable to these offenses "because, pursuant to OCGA § 17-3-2, the crime[s] [were] unknown until at least October 29, 2010."

In his motion for plea in bar, Crowder requested that the charges be dismissed because they were not brought within four years of the dates on which the crimes were allegedly committed (to wit, January 1, 2004 through June 30, 2010), as required by OCGA § 17-3-1. Crowder added that the evidence and the law belied the State's assertion that the government did not know of the alleged crimes before October 29, 2010.

In its order granting the plea in bar, the trial court noted that because the alleged crimes occurred no later than June 30, 2010, the October 24, 2014 indictment was filed outside of the four-year statute of limitation period, and that the prosecution

5

for the crimes was thus barred unless the State proved that the limitation period was tolled pursuant to OCGA § 17-3-2 (2), as alleged in the indictment. The trial court further noted that the statute of limitation began to run for each count of the indictment on the date the State had actual knowledge of Crowder's acts, and found that the State learned of the relevant acts "over the course of the audit [which began in the spring of 2010], well before DOR sent the assessment to [Crowder] on October 29, 2010."

OCGA 17-3-1 (c) provides, in relevant part, that prosecutions for felonies must be commenced within four years after the commission of the crime. See OCGA §§ 48-1-5, 16-8-12 (a) (1) (unlawful conversion of funds collected for benefit of State; felony treatment based on value); OCGA §§ 16-8-2, 16-8-12 (a) (1) (theft by taking; felony treatment based on value); OCGA § 16-10-71 (false swearing is punishable as a felony); see generally *Pippin v. State*, 166 Ga. App. 658, 659 (305 SE2d 408) (1983) (in determining value for felony versus misdemeanor treatment of theft, court applies the statutory dollar amount in effect at the time the crime was committed).

OCGA § 17-3-2 (2) pertinently states: "The period within which a prosecution must be commenced under Code Section 17-3-1 . . . does not include any period in

6

which . . . the crime is unknown." Under OCGA § 17-3-2 (2), the knowledge of the victim (here, the DOR) is imputed to the State. See *Royal v. State*, 314 Ga. App. 20, 22 (1) (723 SE2d 118) (2012). "[T]he determination of when the crime was discovered is a factual one." *State v. Campbell*, 295 Ga. App. 856, 858 (673 SE2d 336) (2009) (footnote omitted). The burden is on the state to prove that the crime occurred either within the statute of limitation, or, if an exception to the statute is alleged, to prove that the case falls within the exception. *Martinez v. State*, 306 Ga. App. 512, 522 (2) (702 SE2d 747) (2010); see *State v. Mullins*, 321 Ga. App. 671 (742 SE2d 490) (2013). Whether the state has met this burden is for the finder of fact. *Merritt v. State,* 254 Ga. App. 788, 789 (1) (a) (564 SE2d 3) (2002). "Exceptions will not be implied to statutes of limitation for criminal offenses, and . . . any exception to the limitation period must be construed narrowly and in a light most favorable to the accused." *Jannuzo v. State*, 322 Ga. App. 760, 761 (746 SE2d 238) (2013) (citation and punctuation omitted).

The State argues that the DOR did not have actual knowledge of the crimes "until after the provision of information by Syntellus following the assessment of October 29, 2010," and that it was only after it received the detailed invoices in

7

January 2011 that the DOR was able to determine whether any crimes had been committed. We hold that the trial court's finding that the DOR had actual knowledge of the acts underlying the charges prior to October 29, 2010 was not clearly erroneous.

As discussed above, the evidence included testimony that Crowder received a sales tax identification number from the DOR in 2003 for his "Resale" business, showing his intent to collect sales tax; that Paris, a DOR employee/auditor, knew in July 2010 that no sales tax had been paid on Syntellus's account since the business opened in 2003; that Martin, a DOR employee/auditor, learned in August 2010 that Syntellus had sold goods to SunTrust Bank and collected sales tax on those sales; that the sales tax collected had not been remitted to the DOR; that Martin relayed that information to Paris, who had been conducting a sales tax audit of Syntellus since the spring; that in August 2010, Martin forwarded to Paris the waiver forms in which Crowder swore that he had collected the sales tax and remitted the tax to the DOR; that on Syntellus's 2008 and 2009 Georgia corporate tax returns, filed on September 9, 2009 and September 17, 2010, Crowder disclosed to the DOR that the company sold computer hardware and that it had current sales tax liability exceeding $1 million; and that by early September 2010, Paris had "no doubt" that Crowder had

8

collected sales tax and failed to remit the tax to the State. Although Paris testified that at the beginning of the audit he thought Syntellus was a service provider and therefore had no sales tax to return or remit, and that it was possible that Crowder was remitting the sales tax owed from a different account, the DOR had information before October 29, 2010 that contradicted those explanations. Thus, the trial court's finding that the State had actual knowledge of the crimes before October 29, 2010 was not clearly erroneous. See *Beauchamp v. State*, 258 Ga. App. 871 (575 SE2d 731) (2002) (a "trial court's findings of fact are not clearly erroneous if there is any evidence to support them"). Because the prosecution was not commenced until October 24, 2014, the trial court did not err in granting the motion for plea in bar.

The State asserts, however, that the statute of limitation period was tolled because "[y]ou don't know anything until you see the details," and Paris did not know "the details" until "after the assessment of October 29, 2010 and the subsequent provision of information by Syntellus." But there was evidence that the DOR had actual knowledge prior to October 29, 2010 that Crowder had collected sales tax, had not remitted the tax, and had falsely sworn that he had remitted the tax to the DOR. The fact that the DOR may not have known some details or known that Crowder's acts were criminal does not mean the DOR lacked actual knowledge of Crowder's

9

conduct for the purpose of tolling the prosecution. See *State v. Lowman*, 198 Ga. App. 8, 9 (400 SE2d 373) (1990). To avail itself of the tolling provision, the DOR must have lacked knowledge of the act itself. Id.; *State v. Briggs*, 332 Ga. App. 608, 611 (2) (774 SE2d 182) (2015) (physical precedent only). The statute of limitation cannot be tolled for the routine investigation of crimes, or based upon the subjective opinion of the DOR or the prosecutor as to whether there is enough evidence to file charges. See *Jenkins v. State*, 278 Ga. 598, 603 (1) (A) (604 SE2d 789) (2004); *Briggs*, supra. There being evidence that the DOR had actual knowledge of Crowder's acts before October 29, 2010 (the earliest date the State alleged it had knowledge), the trial court did not err by finding that the State failed to prove that the exception to the statute of limitation applied in this case.

The cases upon which the State relies to support its position are inapposite. For instance, in one of those cases, *State v. Campbell*, supra, this Court reversed the grant of a plea in bar because the trial court had relied on an incorrect legal standard in determining when the tolling period ended - the trial court erroneously based its decision on when the injured party *could* have known or *should* have known of the criminal acts, rather than when the injured party had *actual* knowledge of the defendant's conduct. Id. at 858. In the instant case, however, the trial court used the

proper legal standard. And here, unlike in *Campbell*, there was evidence that the victim first learned of the conduct at issue less than four years before the State filed the indictment. Id. at 856-857.

Likewise, in another case relied upon by the State, *Harper v. State*, 292 Ga. 557 (738 SE2d 584) (2013), the Supreme Court found, in relevant part, that the trial court erred by failing to analyze the statute of limitation issue in terms of the date that the crimes became known to the victim; the Court thus remanded the case for necessary factual findings applying the proper standard. Id. at 563 (3). Notably, the State contends that *Harper* supports its argument that actual knowledge exists only after the victim "see[s] the details." But *Harper* does not state that. Further, the two cases are distinguishable in that in the instant case the auditors were the victim's employees, and the evidence showed more than the mere raising of "questions" during the four-year limitation period.

Finally, in *Royal*, supra, which involved an allegation that an insured (the defendant) committed disability insurance fraud, an employee of the defendant called the insurance company's fraud hotline and reported that the defendant was working while receiving disability payments. Id. at 21. This Court held that the tolling period ended when an investigator for the insurance company (the victim) met with the

11

caller, reviewed documents during that meeting, and had "some corroboration of the [caller's] allegations." Id. at 22. We held that the trial court did not clearly err by finding that the victim had actual knowledge of the specific acts constituting the crime once the victim's investigator met with the caller and reviewed the documents provided during that meeting; the victim's investigator believed that the documents provided *some* corroboration of the caller's allegations. Id. In *Royal*, the tolling period ended on the date of that meeting - even though the investigator believed that the documentation provided "was not 'enough at that point' to [r]eport the suspected insurance fraud to the insurance commissioner," and despite the fact that the investigator still wanted further documentation and conducted additional interviews before making any formal fraud referral to the insurance commissioner. Id. at 22-23. In the instant case, by contrast, the specific acts at issue were not reported to the victim in a phone call from a third-party, but were discovered by the victim's own employees/auditors. Further, the victim in this case had documentation and other evidence of the specific acts at issue within the limitation period, and well before October 29, 2010 (the earliest date the State claimed to have had knowledge of the acts). That Paris wanted to gather additional details or information (particularly after

12

the September 8, 2010 meeting) did not toll the limitation period. See generally *Jenkins*, supra. Our decision in *Royal* does not provide otherwise.

As noted above, any exception to the limitation period must be construed narrowly and in a light most favorable to the accused. *Jannuzo*, supra. In this case, the trial court did not clearly err by finding that the State failed to meet its burden of proving that it lacked actual knowledge of the specific acts constituting the charged crimes during the limitation period. Thus, the trial court did not err by granting Crowder's motion for plea in bar. See *Jenkins*, supra at 603 (1) (A).

*Judgment affirmed. Ellington, P. J., and Branch, J., concur.*

13