**THIRD DIVISION**
**MILLER, P. J.,**
**MCFADDEN, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 10, 2017**

# In the Court of Appeals of Georgia

A16A2073. THE STATE v. WATSON.

MCMILLIAN, Judge.

In 1996, J. W. reported that she had been raped by a stranger. Nearly sixteen years later, the State obtained a match from the DNA evidence and arrested Kelvin Watson, but he was not indicted for the rape until 2015. After the trial court granted Watson's plea in bar, the State appealed,[1] asserting that (1) the indictment was filed within the applicable statute of limitation and (2) the trial court abused its discretion in finding that the applicable tolling provision did not apply. For the reasons that follow, we find no error and affirm.

The appellate standard of review for a plea in bar asserting a statute of limitation defense is a de novo review of the issues of law. As this ruling

---

[1] See OCGA § 5-7-1 (a) (3).

involves a mixed question of fact and law, we accept the trial court's findings on disputed facts and witness credibility unless they are clearly erroneous, but independently apply the law to the facts.

(Citation omitted.) *State v. Boykin*, 320 Ga. App. 9, 9 (739 SE2d 16) (2013).

The only witness to testify at the plea in bar hearing was the victim. On the night of October 28, 1996, J. W., who was then 18 years old, was driving to her grandmother's home in East Point after she had been kicked out of her mother's house in Woodstock. J. W. was crying and driving erratically after the fight with her mother. While stopped at a red light, a man in the next lane knocked on his window and honked his horn to get her attention. He asked J. W. if she was okay and if he could help her. The man told her his name, but she subsequently testified that, if the man had given her his name, she did not know what he said because she was so upset at the time.[2] She turned at the next light to get to her grandmother's house, and the man followed behind her. He flashed his lights at her, so she pulled over to a gas station to try to call her father. The man pulled in next to her and said that he had a phone she could use to call her father. J. W. testified that, against her better judgment,

---

[2] At the hearing, J. W. testified that she only knew his name at the time of the hearing because she had read it on her subpoena: "Kelvin Wright." However, that is clearly not the defendant's actual name.

2

she followed him to an apartment complex. She thought that it looked safe and eventually agreed to follow him inside.

While inside his apartment, they talked for a while about her fight with her mother, but when she attempted to leave the apartment, he ran to the door and slammed it shut. At that time, J. W. became fearful and ran to the kitchen to grab a knife. He came up behind her and forcibly carried her to a bedroom. She tried to bite him and use her legs to stop him from getting through the door, but he overpowered her. He locked her in the closet for a period of time before coming back with a gun that he put to her head. J. W. tried to fight him off, but the man restricted her hands in some way and forced his penis into her vagina. Afterwards, J. W. thought he appeared confused, but he freed her hands and allowed her to get dressed and leave. The man attempted to give her money, but she refused. She asked for his help in finding her way home because she did not know where she was.

J. W. started to follow the man out of the apartment complex, but he led her to an empty, wooded cul-de-sac. She became frightened that he would shoot her, so she backed up as fast as she could and ended up driving the wrong way down a one-way street until she came upon a gas station that was just closing. When the store clerk saw her, he unlocked the doors, and she asked to use the phone to call her father.

After the store clerk heard J. W. tell her father that she had been raped, he called the police. However, when the police responded that night, J. W. did not tell them that she had been raped inside the man's apartment because she was embarrassed to admit in front of her father that she had followed a strange man home. Instead, she told police that she had stopped by the side of the road and had been raped there. It was not until 2013 after police interviewed her again, that J. W. revealed the details that she recounted at the plea in bar hearing.

Although she testified that she had looked at the sign outside the apartment complex, she stated that she could not remember the name of the complex and rode around with the sex crimes detective for a long time to try to find it, but was "too traumatized." She was "numb" and her "mind was blank." She initially thought the apartment complex was somewhere in East Point, but later believed it had to have been somewhere past East Point. All she could recall for the police was that it may have been near Campbellton Road. When asked, J. W. explained that this incident happened before cell phones were common and that she did not have the man's phone number.[3] After giving her report to the police, she went to Grady Hospital where they

---

[3] Although denied by J. W., the State asked her at the hearing whether she recalled previously stating that she and Watson had exchanged phone numbers that night.

performed a sexual assault examination on her. She returned after a few days to have pictures taken of the bruising around her neck and between her legs and was later admitted to Kennestone Hospital for shock.

On or about March 29, 2013, the State obtained a match of the DNA evidence, and Watson was thereafter indicted on one count of rape, OCGA § 16-6-1 and one count of false imprisonment, OCGA § 16-5-41. Watson filed a plea in bar motion to dismiss based upon a violation of the statute of limitation.[4] Following a hearing, the trial court orally granted Watson's motion to dismiss, announcing "the State has not carried by a preponderance of the evidence that she did not know the identity of this person or have any evidence about him when she did, and what she said today was just a lot of it was contradictory, and it has to be held against her." In its subsequent written order, the trial court included its finding that "the testimony of [J. W.] lacked credibility, and that she did know the identity of her alleged assailant in 1996 – specifically, that she knew his name, phone number, and the location of his neighborhood." This appeal followed.

---

[4] At the motion hearing, the State conceded that the statute had run on the false imprisonment count under OCGA § 17-3-1 (c).

5

1. In its first enumeration of error, the State asserts that the trial court erred in granting Watson's plea in bar because the indictment was filed within the applicable statute of limitation for rape. "The State [bears] the burden of proving that the case is not barred by the statute of limitation." (Citation and punctuation omitted.) *State v. Mullins*, 321 Ga. App. 671, 671 (742 SE2d 490) (2013) (affirming trial court's grant of plea in bar where State failed to plead and prove indictment not barred by applicable statute of limitation). And "any exception to the limitation period must be construed narrowly and in a light most favorable to the accused." (Citation and punctuation omitted.) *State v. Crowder*, 338 Ga. App. 642, 645 (791 SE2d 423) (2016).

We turn first to the applicable statutes. In 1996, the statute of limitation for the crime of rape, codified at OCGA § 17-3-1 (b), was extended from seven to 15 years. Ga. L. 1996, p. 1115, § 4 (effective April 15, 1996). In 2002, the General Assembly amended this statute to provide that prosecution for rape, among other enumerated crimes, "may be commenced at any time when deoxyribonucleic acid (DNA) evidence is used to establish the identity of the accused" provided that "a sufficient portion of the physical evidence tested for DNA is preserved and available for testing

6

by the accused."[5] Ga. L. 2002, p. 650, 651, § 1. See former OCGA § 17-3-1 (c.1).[6] If the DNA evidence does not establish the identity of the accused, the general statute of limitation for rape applies. See OCGA § 17-3-1 (d). Georgia law also provides that "[t]he period within which a prosecution must be commenced under Code Section 17-3-1 or other applicable statute does not include any period in which: . . . (2) The person committing the crime is unknown or the crime is unknown[.]" OCGA § 17-3-2 (2).

Thus, the State maintains that, because it is using DNA to establish Watson's identity, it is permitted to commence the prosecution *at any time* without regard to the tolling separately provided for in OCGA § 17-3-2. Watson argues, on the other hand, that if the identity of the defendant is known due to evidence other than DNA, then

---

[5] This amended statute applies to the 1996 rape at issue here because the rape prosecution would not have been time barred at the time OCGA § 17-3-1 (c.1) was enacted. "Where a statute extends the period of limitation, the extension applies to offenses not barred at the time of the passage of the act, so that a prosecution may be commenced at any time within the newly established period." (Citation omitted.) *Flournoy v. State*, 299 Ga. App. 377, 379 (1) (682 SE2d 632) (2009).

[6] In 2012, this provision was redesignated as § 17-3-1 (d). Ga. L. 2012, p. 899, § 4-1.

the limitation period of 15 years begins to run in accordance with OCGA § 17-3-1 (b).[7]

We find it unnecessary to decide this issue at this time because the State clearly failed to meet its burden to invoke OCGA § 17-3-1 (d) as the State presented no evidence whatsoever at the plea in bar hearing concerning the DNA evidence and what it may have established. See *Crowder*, 338 Ga. App. at 644-45 (at plea in bar hearing, "burden is on the state to prove that the crime occurred either within the statute of limitation, or, if an exception to the statute is alleged, to prove that the case falls within the exception"); *State v. Outen*, 324 Ga. App. 457, 459 (751 SE2d 109) (2013) (same).

2. In its second enumeration of error, the State asserts that the trial court also erred in finding the applicable tolling provision does not apply. The tolling provision found in OCGA § 17-3-2 (2) "requires proof that the person who committed the crime was 'unknown,'" and when this "exception is relied upon, the tolling period ends when the State acquires 'actual knowledge' of the defendant's identity." *Scales v. State*, 310 Ga. App. 48, 49 (1) (712 SE2d 555) (2011). Our Supreme Court has

---

[7] OCGA § 17-3-1 (b) provides that "prosecution for the crime of forcible rape shall be commenced within 15 years after the commission of the crime."

8

explained that "the General Assembly intended for the 'person unknown' tolling exception to apply to a situation . . . where there is no identified suspect among the universe of all potential suspects." *Jenkins v. State*, 278 Ga. 598, 603 (1) (A) (604 SE2d 789) (2004). Thus, "[t]he tolling exception to the statute of limitations cannot be based upon the subjective opinion of the district attorney as to whether there was enough evidence to file charges against a particular person."[8] Id. In *Jenkins*, the police had interviewed the defendant the day after the armed robbery and murder of his nearby neighbor; found that he was a crack addict with three prior burglary convictions; determined that he initially lied about his alibi the night of the murder; and found that his DNA was consistent with that located on a cigarette butt at the crime scene.[9] Thus, the Supreme Court concluded that the State had actual knowledge of Jenkins's identity while investigating the crimes in 1993 and 1994, and the statutes

---

[8] We note that, although *Jenkins* was decided following the General Assembly's 2002 amendment to the statute now found at OCGA § 17-3-1 (d), the crimes at issue there were already time barred before the amendment's effective date, and the amendment was, thus, inapplicable. See *Flournoy*, 299 Ga. App. at 379 (1) (a statute cannot operate to revive offenses that were barred at the time of its enactment).

[9] Due to the imprecision of the DNA test used in 1994, the crime lab could only report that Jenkins's DNA profile was consistent with the DNA found. *Jenkins*, 278 Ga. at 600 (1).

9

of limitation for the non-murder charges were not tolled during the seven years before the State was able to definitively match a palm print lifted from the scene to Jenkins. Id. at 603 (1) (A).

Although the knowledge of a victim is imputed to the State, that knowledge must be *actual* knowledge. See *Beasley v. State*, 244 Ga. App. 836, 838 n.5 (536 SE2d 825) (2000) ("Although we have long held that the victim and others interested in the prosecution come within the class of persons whose knowledge will satisfy the statute, we have not held that such knowledge includes anything other than actual knowledge.") (citations omitted). In *Beasley*, this Court refused to interpret OCGA § 17-3-2 (2) as applying a constructive knowledge or "should have known" standard. Id. at 837 (rejecting defendant's assertion that the State should have been charged with knowledge of his identity because it did not exercise reasonable diligence in matching his fingerprint more than four years after commission of the burglary). See also *Kenerly v. State*, 325 Ga. App. 412, 423 (2) (b) (iii) (750 SE2d 822) (2013) ("under OCGA § 17-3-2 (2), the statute of limitation does not run while the crime or the person who committed the crime is unknown – it does not say and could not have been discovered through the exercise of reasonable diligence") (citation and punctuation omitted) (physical precedent only).

10

Here, the trial court found that J. W. knew Watson's identity, including his name and telephone number.[10] While we are sympathetic to the trauma J. W. experienced and acknowledge that she offered plausible explanations for her inability to remember certain facts, we are nonetheless bound to "accept the trial court's findings on disputed facts and witness credibility unless they are clearly erroneous . . . ." (Citation omitted.) *Boykin*, 320 Ga. App. at 9. Based on the record before us, we cannot say the trial court's findings are clearly erroneous as J. W. testified that Watson told her his name and there was some indication in her testimony that she had told the State at some point that she had been given Watson's telephone number. Accordingly, the trial court did not err in granting the plea in bar.

*Judgment affirmed. McFadden, P. J., concurs. Miller, P. J., concurs in judgment only.*

---

[10] The trial court specifically found "a lot of [J. W.'s testimony] was contradictory" and therefore had to be "held against her." While we reject the notion that a victim's knowledge of "the location of [the accused's] neighborhood" would be alone sufficient to establish "actual knowledge" of the accused's identity, as discussed above, the trial court otherwise found that J. W. knew the identity of her attacker.